Bethany G. Lukitsch (SBN 314376)
*blukitsch@bakerlaw.com*
Ciara N. Westbrooks (SBN 348637)
*cwestbrooks@bakerlaw.com*
**BAKER & HOSTETLER LLP**
1900 Avenue of the Stars
Los Angeles, CA 90067-4301
Telephone: 310.820.8800
Facsimile: 310.820.8859

*Attorneys for Defendant*
BLACKHAWK NETWORK, INC.

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

SILVIA GARCIA,

Plaintiff,

v.

BLACKHAWK NETWORK, INC., an Arizona entity, d/b/a WWW.GIFTCARDS.COM,

Defendant.

Case No. 2:25-cv-07550-JLS-SSC

**DEFENDANT BLACKHAWK NETWORK, INC.'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S COMPLAINT FOR VIOLATION OF THE FEDERAL WIRETAP ACT; CALIFORNIA INVASION OF PRIVACY ACT; AND RELATED COMMON LAW CLAIMS**

*[Filed concurrently with [Proposed] Order; and Declaration of Ciara N. Westbrooks]*

Date: October 24, 2025
Time: 10:30 a.m.
Ctrm: 8A
Judge: Josephine L. Staton

Action Filed: June 30, 2025
Action Removed: August 13, 2025

**NOTICE OF MOTION AND MOTION TO DISMISS**

**TO THE HONORABLE COURT, AND TO PLAINTIFF AND HER COUNSEL OF RECORD HEREIN:**

**PLEASE TAKE NOTICE** that on October 24, 2025 at 10:30 a.m., or as soon thereafter as counsel may be heard in Courtroom 8A of the First Street U.S. Courthouse, located at 350 W 1st Street, Suite 4311 Los Angeles, CA 90012-4565, defendant Blackhawk Network, Inc. ("Blackhawk") will and hereby does move for an order dismissing plaintiff Silvia Garcia's ("Plaintiff") Complaint for Violations of the Federal Wire Tap Act; the California Invasion of Privacy Act; and Related Common Law Claims ("Complaint"). This Motion is made pursuant to Federal Rule of Civil Procedure 12(b)(1), and 12(b)(6) on the grounds that Plaintiff has not established Article III standing and otherwise fails to state a claim against Blackhawk upon which relief can be granted.

Blackhawk seeks dismissal on the following grounds:

1. Plaintiff lacks Article III standing because, as a self-described "tester," she cannot plausibly claim a reasonable expectation of privacy and has not alleged any concrete or personal injury.
2. As Plaintiff's claims all sound in fraud, Blackhawks also moves to dismiss pursuant to Fed. R. Civ. P. 9(b) as each claim falls far short of alleging specific details of the alleged fraud as required.
3. Consent bars Plaintiff's statutory and common-law claims. As alleged in the Complaint, Blackhawk, as a party and owner of its website, giftcards.com (the "Website"), consented to the Magnite Pixel, and Plaintiff impliedly consented by voluntarily visiting the Website to test its use of advertising and analytics technologies.
4. Plaintiff fails to state a claim under the Federal Wiretap Act,18 U.S.C. § 2511. In addition to Blackhawk's consent to any alleged wiretap, Plaintiff (a) does not allege interception of the "contents" of her

communication, (b) does not allege contemporaneous interception "in transit," (c) improperly relies on a procurement or aiding-and-abetting theory not cognizable under the statute, and (d) fails to allege the criminal or tortious purpose needed to invoke the crime-tort exception.

5. Plaintiff fails to state a claim under the California Invasion of Privacy Act, Cal. Penal Code § 638.51. Plaintiff (a) does not allege scienter, (b) does not allege capture of her own signaling information, (c) mischaracterizes the Magnite Pixel as a "trap and trace device," and (d) fails to allege any injury to support a private right of action.

6. Plaintiff's intrusion upon seclusion claim fails because (a) she has no reasonable expectation of privacy in routine metadata, and (b) the alleged conduct is not "highly offensive."

This Motion is supported by this Notice, the accompanying Memorandum of Points and Authorities, all pleadings, papers and records on file in the above-captioned action, and such other oral argument and documentary evidence as may be presented at or before the time of adjudication of this Motion.

This motion is made following the conference of counsel pursuant to L.R. 7-3 which took place on September 16, 2025. *See* Declaration of Ciara N. Westbrooks, Esq. ("Westbrooks Decl."), ¶ 3. The meet and confer did not resolve the issues raised in this Motion. *Id.* ¶¶ 3-4.

Dated: September 19, 2025

Respectfully submitted,

**BAKER & HOSTETLER LLP**

By: */s/ Bethany G. Lukitsch*
BETHANY G. LUKITSCH
CIARA N. WESTBROOKS

*Attorneys for Defendant*
BLACKHAWK NETWORK, INC.

# TABLE OF CONTENTS


I. INTRODUCTION .......... 11

II. BACKGROUND .......... 12

III. LEGAL STANDARD .......... 14

IV. ARGUMENT .......... 16

A. Plaintiff Lacks Article III Standing. .......... 16

1. *Plaintiff's "Tester" Status Precludes Any Reasonable Expectation of Privacy.* .......... 16

2. *Plaintiff Fails to Allege a Personal, Concrete Injury.* .......... 17

B. Consent Bars Plaintiff's Claims. .......... 21

C. ECPA Claim Fails Due to Conclusory Allegations and Misapplication of Statutory Elements .......... 22

1. *Allegations Do Not Establish the Interception of "Contents" of Communication.* .......... 22

2. *Plaintiff Fails to Allege Contemporaneous Interception.* .......... 23

3. *No Interception or Procurement.* .......... 24

4. *No Allegations to Support Crime-Tort Exception.* .......... 25

D. Plaintiff Misapplies CIPA and Fails to Plead Sufficient Facts. .......... 26

1. *Lack of Scienter.* .......... 26

2. *No Use of Plaintiff's Communications or Signaling Information.* .......... 27

3. *The Magnite Pixel Is Not a "Trap and Trace" Device.* .......... 28

4. *No Private Right of Action Without Injury.* .......... 29

E. Plaintiff Fails to Establish an Intrusion Upon Seclusion Claim. .......... 30

V. CONCLUSION .......... 31

# TABLE OF AUTHORITIES

## Cases

*Am. C.L. Union of Nevada v. Lomax*, 471 F.3d 1010 (9th Cir. 2006) ... 14

*Application of U.S. of Am. for an Ord. Authorizing Use of a Cellular Tel. Digital Analyzer*, 885 F. Supp. 197 (C.D. Cal. 1995) ... 29

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ... 15, 16, 23

*B.K. v. Eisenhower Med. Ctr.*, 721 F. Supp. 3d 1056 (C.D. Cal. 2024) ... 25

*Barragan v. Superior Ct.*, 148 Cal. App. 4th 1478 (2007) ... 28

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) ... 15

*Belluomini v. Citigroup Inc*, No. C 13-01743, 2013 WL 5645168 (N.D. Cal. Oct. 16, 2013) ... 30

*Big 5 Sporting Goods Corp. v. Zurich Am. Ins. Co.*, 635 F. App'x 351 (9th Cir. 2015) ... 20

*Byars v. Hot Topic, Inc.*, 656 F. Supp. 3d 1051 (C.D. Cal. 2023) ... 12

*Byars v. Sterling Jewelers, Inc.*, No. 5:22-CV-01456-SB-SP, 2023 WL 2996686 (C.D. Cal. Apr. 5, 2023) ... 17, 18

*Capitol Recs. Inc. v. Thomas-Rasset*, No. 06-cv-1497, 2009 WL 1664468 (D. Minn. June 11, 2009) ... 23

*Chandler v. State Farm Mut. Auto. Ins. Co.*, 598 F.3d 1115 (9th Cir. 2010) ... 14, 16

*Colgate v. JUUL Labs, Inc.*, 402 F. Supp. 3d 728 (N.D. Cal. 2019) ... 15

*Doe I v. Google LLC*, 741 F. Supp. 3d 828 (N.D. Cal. 2024) ... 19

*Gabrielli v. Insider, Inc.*, No. 24-cv-1566, 2025 WL 522515 (S.D.N.Y. Feb. 18, 2025) ... 20

*Gunn v. Minton*, 568 U.S. 251 (2013) ... 14

*Gutierrez v. Converse Inc.*, No. 24-4797, 2025 WL 1895315 (9th Cir. July 9, 2025) ... 28

*Heeger v. Facebook, Inc.*, 509 F. Supp. 3d 1182 (N.D. Cal. 2020) ... 20

*Heiting v. FKA Distrib. Co.*, No. 2:24-CV-07314-HDV-AGR, 2025 WL 736594 (C.D. Cal. Feb. 3, 2025) ... 19

*Heiting v. Taro Pharms. USA, Inc.*, 709 F. Supp. 3d 1007 (C.D. Cal. 2023) ....27

*Hernandez v. Hillsides, Inc.*, 47 Cal. 4th 272 (2009) ....30, 31

*Hughes v. Vivint, Inc.*, No. 24-CV-3081-GW-KSX, 2024 WL 5179916 (C.D. Cal. July 12, 2024) ....19

*In re DoubleClick Inc. Priv. Litig.*, 154 F. Supp. 2d 497 (S.D.N.Y. 2001) ....22, 26

*In re Easysaver Rewards Litig.*, 737 F. Supp. 2d 1159 (S.D. Cal. 2010) ....24

*In re Ford Motor Co./Citibank (S. Dakota), N.A.*, 264 F.3d 952 (9th Cir. 2001) ....14

*In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049 (9th Cir. 2008) ....16

*In re Google Assistant Priv. Litig.*, 457 F. Supp. 3d 797 (N.D. Cal. 2020) ....25

*In re Google Inc. Gmail Litig.*, No. 13-MD-02430, 2014 WL 1102660 (N.D. Cal. Mar. 18, 2014) ....23

*In re Google, Inc. Privacy Policy Litig.*, 58 F. Supp. 3d 968 (N.D. Cal. 2014) ....31

*In re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d 778 (N.D. Cal. 2022) ....26

*In re the Application of the U.S. for an Ord. Authorizing the Installation & Use of a Pen Reg. & Trap & Trace Device*, 890 F. Supp. 2d 747 (S.D. Tex. 2012) ....29

*In re Toys R Us, Inc., Priv. Litig.*, No. 00-CV-2746, 2001 WL 34517252 (N.D. Cal. Oct. 9, 2001) ....25

*In re Vizio, Inc., Consumer Priv. Litig.*, 238 F. Supp. 3d 1204 (C.D. Cal. 2017) ....29

*In re Zynga Privacy Litig.*, 750 F.3d 1098 (9th Cir. 2014) ....23

*Ji v. Naver Corp.*, No. 21-CV-5143, 2022 WL 4624898 (N.D. Cal. Sept. 30, 2022) ....20

*Katz-Lacabe v. Oracle Am., Inc.*, 668 F. Supp. 3d 928 (N.D. Cal. 2023) ....25

*Kearns v. Ford Motor Co.*, 567 F.3d 1120 (9th Cir. 2009) ....15

*Khamooshi v. Politico LLC*, No. 24-CV-7836, 2025 WL 1408896 (N.D. Cal. May 13, 2025) ....16, 19, 20

*Kirch v. Embarq Mgmt. Co.*, 702 F.3d 1245 (10th Cir. 2012) ....24

*Kishnani v. Albertsons Cos., Inc.*,
No. 3:23-cv-01736, 2025 WL 62817 (S.D. Cal. Jan. 6, 2025) .......... 18

*Kishnani v. Humana Inc.*,
No. 2:24-cv-4085, 2025 WL 987654 (C.D. Cal. Feb. 20, 2025) .......... 27

*Kokkonen v. Guardian Life Ins. Co. of Am.*,
511 U.S. 375 (1994) .......... 14

*Konop v. Hawaiian Airlines, Inc.*,
302 F.3d 868 (9th Cir. 2002) .......... 23

*Leite v. Crane Co.*,
749 F.3d 1117 (9th Cir. 2014) .......... 14

*Licea v. Am. Eagle Outfitters, Inc.*,
659 F. Supp. 3d 1072 (C.D. Cal. 2023) .......... 24

*Licea v. Hickory Farms LLC*,
No. 23STCV26148, 2024 WL 1698147 (Cal. Super. Mar. 13, 2024) .......... 29

*Lightoller v. Jetblue Airways Corp.*,
No. 23-CV-361, 2023 WL 3963823 (S.D. Cal. June 12, 2023) .......... 19, 27

*Lopez v. Apple, Inc.*,
519 F. Supp. 3d 672 (N.D. Cal. 2021) .......... 25

*Lorillard v. Pons*,
434 U.S. 575 (1978) .......... 29

*Low v. LinkedIn Corp.*,
900 F. Supp. 2d 1010 (N.D. Cal. 2012) .......... 20, 30

*Luis v. United States*,
578 U.S. 5 (2016) .......... 16

*Lujan v. Defs. of Wildlife*,
504 U.S. 555 (1992) .......... 14

*Mastel v. Miniclip SA*,
549 F. Supp. 3d 1129 (E.D. Cal. 2021) .......... 24

*Maya v. Centex Corp.*,
658 F.3d 1060 (9th Cir. 2011) .......... 20

*McCarthy v. United States*,
850 F.2d 558 (9th Cir. 1988) .......... 14

*Mendiondo v. Centinela Hosp. Med. Ctr.*,
521 F.3d 1097 (9th Cir. 2008) .......... 15

*Mikulsky v. Bloomingdale's, LLC*,
713 F. Supp. 3d 833 (S.D. Cal. 2024) .......... 23

*Mikulsky v. Noom, Inc.*,
682 F. Supp. 3d 855 (S.D. Cal. 2023) .......... 19, 27

*Miller v. Hearst Commc'ns, Inc.*,
No. 12-CV-733-GHK PLAX, 2012 WL 3205241 (C.D. Cal. Aug. 3, 2012) .......... 30

*Mintz v. Mark Bartelstein & Assocs. Inc.*,
906 F. Supp. 2d 1017 (C.D. Cal. 2012) .......... 24

*Mitchener v. Talkspace Network LLC*,
No. 2:24-cv-7067-JAK(BFMx), 2025 WL 1822801 (C.D. Cal. June 27, 2025)....18

*Noel v. Hall*,
568 F.3d 743 (9th Cir. 2009)....25

*NovelPoster v. Javitch Canfield Grp.*,
140 F. Supp. 3d 938 (N.D. Cal. 2014)....24

*Owen Equip. & Erection Co. v. Kroger*,
437 U.S. 365 (1978)....14

*Peavy v. WFAA-TV, Inc.*,
221 F.3d 158 (5th Cir. 2000)....24

*Pena v. GameStop, Inc.*,
670 F. Supp. 3d 1112 (S.D. Cal. 2023)....24, 26

*Performance Designed Prods. LLC v Plantronics, Inc.*,
No. 3:19-CV-00536, 2019 WL 3082160 (S.D. Cal. July 15, 2019)....15

*Pirozzi v. Apple Inc.*,
913 F. Supp. 2d 840 (N.D. Cal. 2012)....15

*Popa v. Microsoft Corp.*,
No. 24-14, 2025 WL 2448824 (9th Cir. Aug. 26, 2025)....passim

*Price v. Headspace, Inc.*,
No. 24STCV19921, 2025 WL 1237977 (Cal. Super. Apr. 01, 2025)....27

*Robins v. Spokeo, Inc.*,
867 F.3d 1108 (9th Cir. 2017),
cert. denied, 538 U.S. 1102 (2018)....15

*Rodriguez v. Autotrader.com, Inc.*,
No. 2:24-CV-08735-RGK-JC, 2025 WL 1085787 (C.D. Cal. Apr. 4, 2025)....17

*Rodriguez v. Autotrader.com, Inc.*,
No. 2:24-CV-08735-RGK-JC, 2025 WL 1122387 (C.D. Cal. Mar. 14, 2025)....17

*Rodriguez v. Google LLC*,
No. 20-CV-04688, 2021 WL 2026726 (N.D. Cal. May 21, 2021)....23, 26

*Roe v. Amgen Inc.*,
No. 2:23-CV-7448-MCS-SSC, 2024 WL 2873482 (C.D. Cal. June 5, 2024)....25

*Rowe v. Educ. Credit Mgmt. Corp.*,
559 F.3d 1028 (9th Cir. 2009)....15

*Ruiz v. Gap, Inc.*,
540 F. Supp. 2d 1121 (N.D. Cal. 2008),
*aff'd,* 380 F. App'x 689 (9th Cir. 2010)....30

*Rutledge v. ADP, Inc.*,
No. 22-CV-898, 2023 WL 4055710 (S.D. Cal. June 16, 2023)....25

*Sparshott v. Feld Ent., Inc.*,
311 F.3d 425 (D.C. Cir. 2002) .......... 21

*Spokeo, Inc. v. Robins*,
578 U.S. 330 (2016) .......... 14, 15

*Steinmeyer v. Am. Ass'n of Blood Banks*,
715 F. Supp. 3d 1302 (S.D. Cal. 2024) .......... 19

*Stock W., Inc. v. Confederated Tribes of the Colville Rsrv.*,
873 F.2d 1221 (9th Cir. 1989) .......... 14

*Torres v. Prudential Financial, Inc.*,
No. 22-cv-7465, 2025 WL 1135088 (N.D. Cal. Apr. 17, 2025) .......... 24

*TransUnion LLC v. Ramirez*,
594 U.S. 413 (2021) .......... 16

*United States v. Forrester*,
512 F.3d 500 (9th Cir. 2008) .......... 19, 30

*United States v. Pacheco*,
225 F.3d 148 (2d Cir. 2000) .......... 29

*Van Patten v. Vertical Fitness Grp., LLC*,
847 F.3d 1037 (9th Cir. 2017) .......... 14

*Vess v. Ciba-Geigy Corp. USA*,
317 F.3d 1097 (9th Cir. 2003) .......... 15

*Weston v. Lefiti*,
No. 23-CV-896, 2023 WL 8458249 (S.D. Cal. Dec. 5, 2023),
*aff'd*, No. 24-541, 2024 WL 4579237 (9th Cir. Oct. 25, 2024) .......... 24, 25

*Williams v. Facebook, Inc.*,
498 F. Supp. 3d 1189 (N.D. Cal. 2019) .......... 15

*Yoon v. Lululemon USA, Inc.*,
549 F. Supp. 3d 1073 (C.D. Cal. 2021) .......... 20, 31

*Zarif v. Hwareh.com, Inc.*,
No. 23-CV-0565, 2025 WL 486317 (S.D. Cal. Feb. 13, 2025) .......... 25

**Statutes**

18 U.S.C. § 2510(8) .......... 23

18 U.S.C. § 2511 .......... 25

18 U.S.C. § 2511(2)(d) .......... 21, 25

18 U.S.C. § 2520(a) .......... 25

Cal. Penal Code § 20 .......... 27

Cal. Penal Code § 637.2 .......... 29

Cal. Penal Code § 638.50 .......... 29

Cal. Penal Code § 638.50(c) .......... 27, 28

Cal. Penal Code § 638.52(d)(1)–(3) .......... 28

California Invasion of Privacy Act, Cal. Penal Code § 638.51 .......... passim

Federal Wiretap Act, 18 U.S.C. § 2511 .......... passim

### Other Authorities

Assembly Bill 929, California 2015-2016 Regular Session....22

Assembly Floor Bill Analysis, AB 929, 2015-2016 Regular Session (July 8, 2015)....28

### Rules

Fed. R. Civ. P. 12(b)(1)....14, 16

Fed. R. Civ. P. 12(b)(6)....15

Fed. R. Civ. P. 9(b)....15

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

This case is part of a significant wave of "pixel" lawsuits attempting to stretch the Federal Wiretap Act, 18 U.S.C. § 2511 ("ECPA"), and the California Invasion of Privacy Act, Cal. Penal Code § 638.51 ("CIPA"), to penalize routine website operations. Plaintiff, a self-described "tester" who "work[s]… to ensure that companies abide by the privacy obligations imposed by California law" (Compl. ¶ 15), engages in a business model of visiting ***public*** websites, manufacturing privacy "violations," and filing boilerplate lawsuits seeking statutory and punitive damages. Plaintiff's testing business is booming; in just the past ***three*** years, Plaintiff has filed at least ***47*** lawsuits asserting purported privacy or consumer claims.[1]

Now, Plaintiff targets Blackhawk's consumer website, giftcards.com (the "Website"), for its alleged use of a standard Magnite advertising pixel ("Magnite Pixel"). She vilifies the technology, calling it "spyware," a "trap and trace device," a real-time "wiretap," and a "bait and switch scheme." Compl. ¶¶ 10-12, 16, 20, 24, 26-27, 32. In doing so, Plaintiff seeks to criminalize ordinary internet operations and turn California's privacy scheme from one that permits users to opt-out of targeted advertising to one that requires opt-in. But her claims suffer from multiple fatal defects, none of which can be cured by amendment.

*First*, Plaintiff lacks Article III standing: she alleges no concrete injury and, as a tester, cannot reasonably claim a privacy expectation in data she voluntarily exposed to a public website. *Second*, even if standing exists, consent bars her claims. *Third,* Plaintiff's ECPA theory also fails for lack of allegations of

[1] *See, e.g.*, *Garcia v. Anschutz Entertainment Group, Inc.*, No. 5:25-cv-02282 (C.D. Cal. Sep 02, 2025); *Garcia v. California Cryobank LLC*, No. 2:25-cv-07897 (C.D. Cal. Aug 22, 2025); *Garcia v. Manson Western, LLC*, No. 5:25-cv-01280 (C.D. Cal. May 26, 2025); *Garcia v. Feature LLC*, No. 2:25-cv-02824 (C.D. Cal. Apr. 01, 2025); and *Garcia v. Ariat International, Inc.*, No. 2:25-cv-01784 (C.D. Cal. Feb. 28, 2025).

contemporaneously intercepted "contents,", or a separate unlawful purpose to invoke the crime/fraud exception. *Fourth*, Plaintiff's CIPA claim also fails: if the pixel collects "content" under the ECPA, it cannot be a trap and trace device, and she does not plead scienter. *Finally*, Plaintiff's intrusion claim fails because routine metadata collection (*e.g.*, IP addresses) is neither private nor "highly offensive," especially where she sought out the practices. For these reasons, and as explained more fully below, the Court should dismiss Plaintiff's Complaint with prejudice.

## II. BACKGROUND

Blackhawk is an Arizona entity that operates the Website, a public-facing platform through which individuals can browse and purchase gift cards online. Compl. ¶¶ 1, 9. The Website contains standard privacy disclosures and policies (*i.e.*, Terms of Use, Privacy Policy, and Cookie Policy), including a statement that "[t]he security of your personal information is important to us," and a cookie banner that appears the moment a user first lands on the Website and directs users to Blackhawk's corporate Cookie Policy. Compl. ¶ 2.

Plaintiff is a California resident who alleges she visited the Website "in the last year." Compl. ¶¶ 8, 15. Plaintiff is not an ordinary consumer, but a self-styled "consumer privacy advocate" and "tester," striving to "ensure that companies abide by the privacy obligations imposed by California law." Compl. ¶ 15. Plaintiff and her counsel file "cookie cutter" CIPA lawsuits against businesses. *See, e.g., Byars v. Hot Topic, Inc.*, 656 F. Supp. 3d 1051, 1059 (C.D. Cal. 2023).

Despite this self-appointed watchdog role, Plaintiff's Complaint is devoid of any meaningful detail about ***her*** alleged visit to the Website. She does not allege the date of her visit, how she accessed the Website (direct or from a referring advertisement or website), whether it was her first or only visit, what pages she viewed, whether she entered any personal information, the browser/privacy settings on her device, or ***what information—content—of hers, if anything, was actually captured from her session.***

Plaintiff generally alleges that Blackhawk embedded the Magnite Pixel on its Website. She characterizes the Magnite Pixel as "spyware" that immediately begins collecting data such as IP addresses, cookie identifiers, device IDs, referrer URLs, and other technical information "the moment a user lands on the Website." Compl. ¶¶ 10-12, 16. According to Plaintiff, the pixel engages in "cross-device analytics," linking behavior across multiple devices and websites to build consumer profiles, which ***may*** then be used for targeted advertising. Compl. ¶ 11-12, 24-26, 48. Despite these assertions of the Magnite Pixel's capabilities, Plaintiff fails to allege the Magnite Pixel captured ***her*** cookie identifiers, device IDs, referral URLs or other metadata or that she received a ***single*** advertisement related to her visit to the Website. Plaintiff also attempts to frame Blackhawk's conduct as a "bait and switch," alleging that the Website promises "security" while despite acknowledgement of a cookie notice banner, somehow "secretly" enables third-party surveillance. *See* Compl. ¶¶ 1-2, 10, 24, 32. Importantly, Plaintiff does not allege any harm she has suffered as a result of her Website visit.

To bolster her claims, Plaintiff relies on generalized commentary about data brokers broadly, extrapolating from what other entities might do to portray Magnite as "predatory" and Blackhawk as complicit in Magnite's alleged selling of cumulative consumer data it collects from multiple sources to the highest bidder. *See* Compl. ¶¶ 3, 14, 25-27, 29. These allegations, however, are untethered to any conduct specific to Blackhawk or Plaintiff.[2] Based on these conclusory allegations, Plaintiff asserts three causes of action: (1) violation of the ECPA (Compl. ¶¶ 35-39); (2) violation of CIPA (Compl. ¶¶ 43-46); and (3) common-law intrusion upon seclusion (Compl. ¶¶ 48-49).

[2] Civ. Code § 1798.110 allows consumers to request data held by businesses. Yet, Plaintiff does not allege that Magnite has ***any*** data on her or that such data came from her Website visit.

## III. LEGAL STANDARD

Under Fed. R. Civ. P. 12(b)(1), a district court may properly dismiss an action for lack of subject matter jurisdiction. *Chandler v. State Farm Mut. Auto. Ins. Co.*, 598 F.3d 1115, 1122 (9th Cir. 2010). Federal courts are courts of limited jurisdiction, possessing only the authority granted by the Constitution and statute. *Gunn v. Minton*, 568 U.S. 251, 256 (2013); *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). Jurisdictional limits must not be disregarded, and a federal court is presumed to lack jurisdiction unless affirmatively shown. *Owen Equip. & Erection Co. v. Kroger*, 437 U.S. 365, 374 (1978); *Stock W., Inc. v. Confederated Tribes of the Colville Rsrv.*, 873 F.2d 1221, 1225 (9th Cir. 1989). The plaintiff bears the burden of establishing jurisdiction. *See, e.g., In re Ford Motor Co./Citibank (S. Dakota), N.A.*, 264 F.3d 952, 957 (9th Cir. 2001).

A facial attack to jurisdiction "accepts the truth of the plaintiff's allegations but asserts that they 'are insufficient on their face to invoke federal jurisdiction.'" *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014). A factual challenge allows the court to consider evidence beyond the pleadings. *McCarthy v. United States*, 850 F.2d 558, 560 (9th Cir. 1988).

At the core of jurisdiction inquiry is Article III standing, requiring plaintiffs to allege (1) an injury-in-fact, (2) traceability to the defendant's challenged conduct, and (3) redressability. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 559-60 (1992); *Spokeo, Inc. v. Robins*, 578 U.S. 330, 337 (2016), *as revised* (May 24, 2016) (quoting *Lujan*, 504 U.S. at 560-61); *Am. C.L. Union of Nevada v. Lomax*, 471 F.3d 1010, 1015 (9th Cir. 2006). A statutory violation alone does not confer standing without a concrete, particularized, and actual or imminent harm. *Van Patten v. Vertical Fitness Grp., LLC*, 847 F.3d 1037, 1042 (9th Cir. 2017); *Popa v. Microsoft Corp.*, No. 24-14, 2025 WL 2448824, at *20 (9th Cir. Aug. 26, 2025) (noting "individual circumstances giv[e] rise to the plaintiffs' alleged injuries rather than

simply greenlighting a per se rule for privacy statutes"); *Robins v. Spokeo, Inc.*, 867 F.3d 1108, 1112 (9th Cir. 2017), cert. denied, 538 U.S. 1102 (2018).

Under Fed. R. Civ. P. 9(b), claims that "sound in fraud" must meet a heightened pleading standard. The rule applies even where the word "fraud" is not used, so long as the claims rely on a unified course of fraudulent conduct. *See Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009) (the word "fraud" need not be used); *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103-04 (9th Cir. 2003); *Williams v. Facebook, Inc.*, 498 F. Supp. 3d 1189, 1200-01 (N.D. Cal. 2019) (applying Rule 9(b) to misrepresentation-based claims including intrusion upon seclusion and invasion of privacy claims). Plaintiff must "state with particularity the circumstances constituting fraud or mistake, including the who, what, when, where, and how of the misconduct charged." *Colgate v. JUUL Labs, Inc.*, 402 F. Supp. 3d 728, 744 (N.D. Cal. 2019). To show entitlement to relief Plaintiff must also plead allegations about her own experience. *See Pirozzi v. Apple Inc.*, 913 F. Supp. 2d 840, 850 (N.D. Cal. 2012) (dismissing fraud-based claims where plaintiff "fail[ed] to provide the particulars of her own experience" reviewing or relying on misrepresentations).

Fed. R. Civ. P. 12(b)(6) allows dismissal where a complaint lacks a cognizable legal theory or fails to allege sufficient facts to support one. *See* Fed. R. Civ. P. 12(b)(6); *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008). To survive, Plaintiff must allege facts that raise a right to relief above the speculative level, not merely threadbare recitals or conclusory statements. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009); *Performance Designed Prods. LLC v Plantronics, Inc.*, No. 3:19-cv-00536, 2019 WL 3082160, at *3 (S.D. Cal. July 15, 2019); *Spokeo, Inc.*, 578 U.S. at 339. At the pleading stage, courts must accept factual allegations but not legal conclusions or unwarranted inferences. *Rowe v. Educ. Credit Mgmt. Corp.*, 559 F.3d 1028, 1029-30 (9th Cir. 2009); *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049,

1055 (9th Cir. 2008). This "context-specific" inquiry requires courts "to draw on…judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

## IV. ARGUMENT

Plaintiff's claims share a fundamental flaw: each relies on vague allegations that are disconnected from her own visit to the Website. Her factual assertions are limited to a ***single*** paragraph (Compl. ¶ 15), and those sparse allegations fail to establish the essential elements of her claims. As such, Blackhawk respectfully moves to dismiss each claim in the Complaint for the reasons set forth below.

### A. Plaintiff Lacks Article III Standing.

Plaintiff's Complaint should be dismissed pursuant to Fed. R. Civ. P. 12(b)(1) for failure to allege facts establishing Article III standing. *See Chandler*, 598 F.3d at 1122. Whether a harm qualifies as "concrete" hinges on whether the alleged injury to the plaintiff bears a "close relationship" to a harm "traditionally recognized as providing a basis for a lawsuit in American courts." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 425 (2021); *Khamooshi v. Politico LLC*, No. 24-cv-7836, 2025 WL 1408896, at *6 (N.D. Cal. May 13, 2025). A procedural violation alone is insufficient. *TransUnion*, 594 U.S. at 440; *Luis v. United States*, 578 U.S. 5, 34 (2016); *Popa*, 2025 WL 2448824, at *20 (noting "individual circumstances giv[e] rise to the plaintiffs' alleged injuries rather than simply greenlighting a per se rule for privacy statutes."). This is because, under Article III, "***an injury in law is not an injury in fact***." *TransUnion*, 594 U.S. 413 at 425. (emph. added). The Complaint falls woefully short of establishing that Plaintiff suffered *any injury*, let alone a concrete injury sufficient to establish Article III standing.

#### ***1. Plaintiff's "Tester" Status Precludes Any Reasonable Expectation of Privacy.***

At the outset, courts have held that a tester plaintiff who "seek[s] out invasions of privacy" cannot claim a reasonable expectation to privacy or an injury-in-fact. *Rodriguez v. Autotrader.com, Inc.*, No. 2:24-cv-08735-RGK-JC, 2025 WL 1122387,

at *2 (C.D. Cal. Mar. 14, 2025) ("*Autotrader I*"); *see also Byars v. Sterling Jewelers, Inc.*, No. 5:22-cv-01456-SB-SP, 2023 WL 2996686, at *4 (C.D. Cal. Apr. 5, 2023) (dismissing privacy claims for lack of standing where the tester plaintiff lacked a reasonable expectation of privacy and therefore suffered no injury-in-fact).

The same logic applies here. Plaintiff is no ordinary consumer, she casts herself as a "consumer privacy advocate" and "tester" (Compl. ¶ 15), and visited the Website for the express purpose of testing and litigation. Courts have consistently recognized that such self-engineered "injuries" cannot support Article III standing. *See Autotrader I*, *supra*, at *1; *Rodriguez v. Autotrader.com, Inc.*, No. 2:24-cv-08735-RGK-JC, 2025 WL 1085787, at *1 (C.D. Cal. Apr. 4, 2025) ("*Autotrader II*"). In *Autotrader I*, plaintiff, represented by the same counsel as Ms. Garcia, brought similar claims under CIPA §§ 631 and 638 and expressly identified herself as a privacy "tester." *Autotrader I*, at *2. There, the court emphasized that plaintiff "fully expected" a privacy violation when visiting the Website in order to file suit, and therefore lacked a reasonable expectation of privacy or an injury-in-fact sufficient to establish standing. *Id.* The court dismissed plaintiff's § 631 claim with prejudice, and later dismissed her § 638 claim *sua sponte* for the same reason. *Id.*; *Autotrader II*, at *2. Plaintiff, acting as a tester, should fare no better—she deliberately manufactured her supposed privacy injury and cannot establish standing based on a self-created injury.

#### ***2. Plaintiff Fails to Allege a Personal, Concrete Injury.***

But even if the Court were to disregard her "tester" status, Plaintiff fails to establish standing otherwise because Plaintiff does not allege ***any facts about her visit to the Website whatsoever***, ***nor does her Complaint identify any information that if collected (a fact she does not allege) would arise to the level of a privacy invasion***. Namely, Plaintiff ***does not*** allege: (1) the date of her visit; (2) whether this was her first and only visit to the Website; (3) what "electronic impulses" of hers were captured (if any); (4) what information those electronic impulses allegedly

contained; (5) how she got to the Website;[3] (6) what (if anything) she did or purchased during that visit; (7) whether she visited anything other than the homepage; or (8) what "content" was collected, if any—that she entered any personal or identifying information into the Website. *See generally*, Compl.

In fact, Plaintiff's only specific allegation is that she visited the Website "in the last year" and, without mention of any specific items, was "genuinely interested in the goods, services, and information available on Defendant's Website." Compl. ¶ 15. The rest of the Complaint offers generalized claims about what the Magnite Pixel *may be capable* of collecting, completely untethered to Plaintiff's own experience. *See generally, id.* Such speculative allegations cannot establish concrete injury because they do not sufficiently demonstrate what the Magnite Pixel *actually collected* from Plaintiff (if anything) or that this alleged collection *caused her harm*. *See Kishnani v. Albertsons Cos., Inc.*, No. 3:23-cv-01736, 2025 WL 62817, at *4-5 (S.D. Cal. Jan. 6, 2025) (finding allegations about defendant "could gain" from a technology failed to plead concrete injury).

Without alleging specific personal information was collected or disclosed, Plaintiff lacks standing. *See, e.g.*, *Popa*, 2025 WL 2448824, at *5 (recognizing that standing requires a plaintiff-specific inquiry tied to a common-law analog, and finding no "highly offensive" harm where Popa failed to allege the collection of private or sensitive information akin to intrusion upon seclusion or public disclosure of private facts); *Byars*, 2023 WL 2996686, at *1 (finding no Article III standing where "[p]laintiff does not identify any personal or sensitive information she disclosed on the website"); *Mitchener v. Talkspace Network LLC*, No. 2:24-cv-7067-JAK(BFMx), 2025 WL 1822801, at *8 (C.D. Cal. June 27, 2025) (finding no standing where the complaint failed to allege any personal information was

---

[3] Plaintiff alleges that the Magnite Pixel collects "IP address[es]," "URL referrer paths," and related metadata (Compl. ¶ 20) but does not allege that she was referred to the Website from another URL, or that any such metadata was captured during ***her*** alleged visit.

collected, and thus did not implicate a privacy interest); *Khamooshi*, 2025 WL 1408896, at *4-5) (same); *Mikulsky v. Noom, Inc.*, 682 F. Supp. 3d 855, 865 (S.D. Cal. 2023) (same); *Lightoller v. Jetblue Airways Corp.*, No. 23-cv-361, 2023 WL 3963823, at *4 (S.D. Cal. June 12, 2023) (finding plaintiff failed to allege any concrete harm tied to her right to control her personal information, and thus failed to establish injury-in-fact); *Heiting v. FKA Distrib. Co.*, No. 2:24-cv-07314-HDV-AGR, 2025 WL 736594, at *3 (C.D. Cal. Feb. 3, 2025) (dismissing where "Plaintiff fails to allege any basic facts from which the Court could infer a concrete injury"); *Hughes v. Vivint, Inc.*, No. 24-cv-3081-GW-KSX, 2024 WL 5179916, at *4 (C.D. Cal. July 12, 2024) (same); *Steinmeyer v. Am. Ass'n of Blood Banks*, 715 F. Supp. 3d 1302, 1318 (S.D. Cal. 2024) ("[p]laintiff cannot establish constitutional standing based on conclusory statements").

Furthermore, Plaintiff's lone allegation about her seemingly single visit to the Website (likely initiated at the direction of her counsel), support only the plausible inference that (at most) her IP address and perhaps similar metadata may have been collected by the Magnite Pixel. While the Complaint broadly claims that the Magnite Pixel captures "name, contact information, location data, browsing behavior, device fingerprints, and interests" (*see* Compl. ¶ 25), these allegations are vague boilerplate unsupported by specific facts.[4] Courts consistently hold that such metadata (*e.g.*, IP addresses), routinely and voluntarily exchanged during ordinary browsing, does not implicate a reasonable expectation of privacy or constitute a concrete injury sufficient to confer standing. *See United States v. Forrester*, 512 F.3d 500, 510 (9th Cir. 2008) ("Internet users have no expectation of privacy in the…IP addresses of

---

[4] Even if Plaintiff had input data or browsed the Website, she does not allege that the Magnite Pixel was present on any specific page or that she submitted any personal information through any form. *See Doe I v. Google LLC*, 741 F. Supp. 3d 828, 839 (N.D. Cal. 2024) ("plaintiffs cannot simply allege that a 'web property' contains source code and then assume this means every single page on that property contains source code").

the websites they visit."); *Gabrielli v. Insider, Inc.*, No. 24-cv-1566, 2025 WL 522515, at *4 (S.D.N.Y. Feb. 18, 2025) ("…an IP address which cannot identify an individual user and at most conveys general geographic information does not justify [that a legally protected privacy interest is implicated]"); *Heeger v. Facebook, Inc.*, 509 F. Supp. 3d 1182, 1190 (N.D. Cal. 2020) ("There is no legally protected privacy interest in IP addresses alone[.]"); *Khamooshi*, 2025 WL 1408896, at *3 (finding the disclosure of IP addresses do not give rise to a privacy injury).[5] Moreover, Plaintiff's references to categories like name and contact information (*see* Compl. ¶ 25) do not salvage her claims, as courts have consistently found no protectable privacy interest in such data. *See Low v. LinkedIn Corp.*, 900 F. Supp. 2d 1010, 1025 (N.D. Cal. 2012) ("The information disclosed to third parties … including a numeric code associated with a user and the URL of the profile page viewed, does not meet the standard set by California courts."); *Yoon v. Lululemon USA, Inc.*, 549 F. Supp. 3d 1073, 1086 (C.D. Cal. 2021) (finding no cognizable privacy interest in keystrokes, page clicks, page views, and browsing activities); *Ji v. Naver Corp.*, No. 21-cv-5143, 2022 WL 4624898, at *7 (N.D. Cal. Sept. 30, 2022) (collection of "user and device identifiers" could not give rise to "a privacy injury"). Without concrete harm to her privacy, Plaintiff has failed to satisfy the injury-in-fact requirement for Article III standing and the Complaint must be dismissed. *See Maya v. Centex Corp.*, 658 F.3d 1060, 1067 (9th Cir. 2011) ("lack of Article III standing requires dismissal[.]").

---

[5] Courts have routinely found that disclosure of ZIP codes (akin to IP addresses) alone does not constitute an invasion of privacy. *Big 5 Sporting Goods Corp. v. Zurich Am. Ins. Co.*, 635 F. App'x 351, 354 (9th Cir. 2015) ("California does not recognize any common law or constitutional privacy right causes of action for requesting, sending, transmitting, communicating, distributing, or commercially using ZIP Codes").

**B. Consent Bars Plaintiff's Claims.**

Even if Plaintiff could establish standing (she cannot), her claims still fail because the alleged conduct was consented to, both by Blackhawk as the Website operator and implicitly by Plaintiff herself.

ECPA is a one-party-consent statute: "It shall not be unlawful … to intercept a[n] … electronic communication where such person is a party to the communication or where one of the parties to the communication has given prior consent to such interception …." 18 U.S.C. § 2511(2)(d). To state a claim, Plaintiff must allege that *neither* party consented. But here, the alleged "communications" were between Plaintiff (a Website visitor) and Blackhawk (the Website operator), making Blackhawk a party to the communication. Plaintiff's own theory is that Blackhawk "installed" the Magnite Pixel, which confirms Blackhawk's consent to its use. *See* Compl. ¶¶ 10, 15. That forecloses ECPA liability absent the crime-tort exception (*see* Section IV(C)(4)).

CIPA similarly exempts trap-and-trace or pen-register use "if the consent of the user of that service has been obtained." Cal. Penal Code § 638.51(b)(5). According to Plaintiff's own allegations, Blackhawk (the Website's owner) is the "user" of the Magnite Pixel by virtue of having installed it. *See* Compl. ¶ 10 ("***Defendant has installed on its Website*** a spyware pixel…") (emph. added). CIPA's use of the singular "user" for § 638.51's consent requirement is a notable and intentional departure from other provisions of CIPA (*e.g.*, § 631's prohibition on wiretapping), that require the consent of all parties. Because pen registers and trap and trace devices do not provide the "content of the messages," they are not subject to the same level of scrutiny as wiretaps. *See* Assembly Bill 929, California 2015-2016 Regular Session. Indeed, interpreting CIPA to require consent from all parties would criminalize common technologies like caller ID, which identifies incoming callers without their prior consent. *See Sparshott v. Feld Ent., Inc.*, 311 F.3d 425, 432 (D.C. Cir. 2002) ("it is hard to see how any caller ID system, even

that used for emergency services, would be legal."). As courts have recognized, such an interpretation would render even emergency services illegal and unworkable. *See id.*; *see also In re DoubleClick Inc. Priv. Litig.*, 154 F. Supp. 2d 497, 516 (S.D.N.Y. 2001) (finding that because website operators are the "users" of advertising cookies placed on their website, not the website visitors, a similar consent exception under the ECPA applied). The same logic applies here: Blackhawk, as the "user," consented to the Magnite Pixel's use, defeating Plaintiff's CIPA claim.

Plaintiff's intrusion upon seclusion theory also collapses on consent grounds because her own actions imply her consent. Plaintiff did not stumble into an unwanted "surveillance" scheme, she sought it out. Having orchestrated the alleged intrusion, Plaintiff necessarily consented to it.

### C. ECPA Claim Fails Due to Conclusory Allegations and Misapplication of Statutory Elements.

Although Plaintiff's claims are foreclosed by consent, her ECPA claim independently fails because she fails to: (1) allege interception of protected "contents," (2) plead contemporaneous interception, (3) attribute the alleged conduct to Blackhawk, and (4) allege a criminal or tortious purpose sufficient to invoke the ECPA's crime-tort exception.

#### *1. Allegations Do Not Establish the Interception of "Contents" of Communication.*

Plaintiff's ECPA claim fails because it lacks factual allegations showing that any "contents" of her communications were intercepted. The ECPA prohibits the interception of the "contents" of an electronic communication, defined as "any information concerning the substance, purport, or meaning of [a] communication." 18 U.S.C. § 2510(8). Yet, the Complaint does not contain any specific "content" collected from Plaintiff during her visit. Compl. ¶ 15. Did she use a search bar or click around the Website? The Complaint does not say. Courts consistently reject

such "threadbare" allegations. *Iqbal*, 556 U.S. at 678-79; *Mikulsky v. Noom, Inc.*, 682 F. Supp. 3d 855, 865 (S.D. Cal. 2023).

Plaintiff attempts to compensate for the lack of allegations about her own Website activity with generalized claims about data brokers and Magnite's capabilities—*i.e.*, that it has the ability to collect metadata. Compl. ¶¶ 11, 20–21, 25, 27, 35. Courts distinguish between protected "contents" and non-content routing or record information such as IP addresses, URLs, referrers, cookies, device IDs, and clickstream data. *See Kishnani v. Royal Caribbean Cruises Ltd.*, No. 25-cv-01473, 2025 WL 1745726, at *4-5 (N.D. Cal. June 24, 2025) (noting that the collection of metadata like IP address or general location does not implicate a privacy interest; if only metadata is alleged, plaintiff lacks standing; and if content is collected, the statute does not apply); *Mitchener v. CuriosityStream, Inc.*, No. 25-cv-01471-NW, 2025 WL 2272413, at *4-5 (N.D. Cal. Aug. 6, 2025) (same); *In re Zynga Privacy Litig.*, 750 F.3d 1098, 1106-07 (9th Cir. 2014); *Mikulsky v. Bloomingdale's, LLC*, 713 F. Supp. 3d 833 (S.D. Cal. 2024).[6] The metadata Plaintiff references does not support an ECPA violation.

***2. Plaintiff Fails to Allege Contemporaneous Interception.***

Even if Plaintiff's vaguely identified "contents" stand, she still fails to allege interception of this "content" *in transit*. The ECPA requires contemporaneous acquisition of communication contents. *See Konop v. Hawaiian Airlines, Inc.*, 302 F.3d 868, 878 (9th Cir. 2002). Courts consistently dismiss claims where data is accessed after reaching a server. *See Rodriguez v. Google LLC*, No. 20-cv-04688, 2021 WL 2026726, at *6 (N.D. Cal. May 21, 2021); *In re Google Inc. Gmail Litig.*, No. 13-MD-02430, 2014 WL 1102660, at *11 (N.D. Cal. Mar. 18, 2014). Given the speed of internet communications, courts recognize that ECPA's application to such

[6] Plaintiff's theory would criminalize routine server-client exchanges and require court orders for each new IP address, an outcome courts have rejected as incompatible with basic internet functionality. *See Capitol Recs. Inc. v. Thomas-Rasset*, No. 06-cv-1497, 2009 WL 1664468, at *4 (D. Minn. June 11, 2009).

transmissions is "undoubtedly limited" and rarely met. *NovelPoster v. Javitch Canfield Grp.*, 140 F. Supp. 3d 938, 951-52 (N.D. Cal. 2014); *see also, e.g.*, *Mintz v. Mark Bartelstein & Assocs. Inc.*, 906 F. Supp. 2d 1017, 1031 (C.D. Cal. 2012); *Licea v. Am. Eagle Outfitters, Inc.*, 659 F. Supp. 3d 1072, 1077-78 (C.D. Cal. 2023); *Mastel v. Miniclip SA*, 549 F. Supp. 3d 1129, 1137 (E.D. Cal. 2021); *Pena v. GameStop, Inc.*, 670 F. Supp. 3d 1112, 1120-21 (S.D. Cal. 2023); *Torres v. Prudential Financial, Inc.*, No. 22-cv-7465, 2025 WL 1135088, at *5-7 (N.D. Cal. Apr. 17, 2025) (finding a defendant cannot "read" (or attempt to read) session replay data "in transit). Here, Plaintiff offers no facts, only speculative buzzwords (Compl. ¶¶ 16, 35) (nor can she without complete speculation), to suggest that Magnite intercepted any communications before they reached Blackhawk. Without allegations of contemporaneous interception, her ECPA claim fails.

### ***3. No Interception or Procurement.***

Plaintiff's ECPA claim fails not only for lack of unlawful interception, but also because Blackhawk neither intercepted communications nor can be held liable for procuring or using any alleged interception.

First, Plainitff does not allege that ***Blackhawk*** intercepted any communications. Her theory centers on Magnite's alleged conduct, not Blackhawk's. *See* Compl. ¶¶ 11–14, 16, 35–36. But under the ECPA civil liability attaches only to the direct violators, ***not to those who procure or enable it***. *Kirch v. Embarq Mgmt. Co.*, 702 F.3d 1245, 1246-47 (10th Cir. 2012) (holding no civil ECPA claim for "procuring" or "aiding and abetting" an interception); *Peavy v. WFAA-TV, Inc.*, 221 F.3d 158, 169 (5th Cir. 2000) (same); *Weston v. Lefiti*, No. 23-cv-896, 2023 WL 8458249, at *3 (S.D. Cal. Dec. 5, 2023), *aff'd,* No. 24-541, 2024 WL 4579237 (9th Cir. Oct. 25, 2024); *Herzer v. Redstone*, No. 17-cv-7545 PSG (KSX), 2018 WL 5094933, at *7 (C.D. Cal. July 10, 2018); *In re Easysaver Rewards Litig.*, 737 F. Supp. 2d 1159, 1183-84 (S.D. Cal. 2010) (dismissing ECPA claim with prejudice where defendant received, but did not intercept, information, because

liability under the ECPA is limited to direct violators, not aiders or abettors); *In re Toys R Us, Inc., Priv. Litig.*, No. 00-cv-2746, 2001 WL 34517252, at *6-7 (N.D. Cal. Oct. 9, 2001) (finding 18 U.S.C. § 2520(a) "does not provide a cause of action against aiders and abetters" and thus "plaintiffs may not proceed against [defendant for an ECPA claim] on such theory"). Congress deliberately excluded civil liability for procurement when enacting the ECPA. Second, Plaintiff cannot salvage her claim by alleging unlawful disclosure or use under 18 U.S.C. § 2511(1)(c)-(d). These provisions apply only where the underlying interception was unlawful. *See Noel v. Hall*, 568 F.3d 743, 751 (9th Cir. 2009); *Weston*, 2023 WL 8458249, at *5; *In re Google Assistant Priv. Litig.*, 457 F. Supp. 3d 797, 819 (N.D. Cal. 2020). Without a predicate interception, nor a criminal or tortious purpose (*see* Section IV(C)(4)), any derivative claims for use or disclosure also fail. *See Weston*, 2023 WL 8458249, at *3-5; *Rutledge v. ADP, Inc.*, No. 22-cv-898, 2023 WL 4055710, at *5 (S.D. Cal. June 16, 2023); *Lopez v. Apple, Inc.*, 519 F. Supp. 3d 672, 684-85 (N.D. Cal. 2021) (where, as here, plaintiffs included only conclusory allegations of interception with respect to their own communications, court found plaintiffs failed to allege a predicate interception and could not plead a disclosure claim).

#### ***4. No Allegations to Support Crime-Tort Exception.***

Due to party consent, Plaintiff's ECPA claim is foreclosed unless she has adequately alleged facts to show the crime-tort exception applies. She has not. That exception applies where the alleged interception's purpose was criminal or tortious. 18 U.S.C. § 2511(2)(d); *Zarif v. Hwareh.com, Inc.*, No. 23-cv-0565, 2025 WL 486317, at *9 (S.D. Cal. Feb. 13, 2025). As here, allegations that a defendant sought commercial advantage, targeted ads, or revenue do not satisfy the exception. *See* Compl. ¶¶ 2, 4, 24, 39, 48; *Zarif*, 2025 WL 486317, at *9-10; *Roe v. Amgen Inc.*, No. 2:23-cv-7448-MCS-SSC, 2024 WL 2873482, at *6 (C.D. Cal. June 5, 2024); *B.K. v. Eisenhower Med. Ctr.*, 721 F. Supp. 3d 1056, 1065 (C.D. Cal. 2024); *Katz-Lacabe v. Oracle Am., Inc.*, 668 F. Supp. 3d 928, 945 (N.D. Cal. 2023); *In re Meta*

*Pixel Healthcare Litig.*, 647 F. Supp. 3d 778, 797 (N.D. Cal. 2022); *Rodriguez*, 2021 WL 2026726, at *6; *In re DoubleClick Inc. Privacy Litigation*, 154 F. Supp. 2d at 518; *Pena*, 670 F. Supp. 3d at 1119. [7] Plaintiff's "fraud" contention that Blackhawk "acted with a tortious and unlawful purpose" is unsupported and contradicted by her claims that Blackhawk used the Magnite Pixel for advertising. Plaintiff simply argues that the Magnite Pixel had the *effect* of disclosing some undescribed personal or "intimate" information and argues that such disclosures violated the ECPA. Compl. ¶¶ 15, 32. But these were not goals or objectives that Blackhawk purposefully sought to accomplish. There is nothing remotely sufficient under Rule 9(b) in the Complaint to suggest that Blackhawk had the conscious purpose to commit a crime or tort, in allegedly deploying Magnite Pixel, to violate the ECPA.

### D. Plaintiff Misapplies CIPA and Fails to Plead Sufficient Facts.

While Plaintiff's ECPA claim fails for lack of factual support and statutory fit, her CIPA claim fares no better. In addition to Blackhawk's consent, Plaintiff's CIPA theory is deficient on four additional independent grounds: (1) failure to plead the required scienter, (2) failure to allege interception of her own protected signaling information, (3) mischaracterization of the Magnite Pixel as a "trap and trace" device, and (4) lack of any alleged injury sufficient to support a private right of action, and (5) to the extent Plaintiff alleges the collection of content under ECPA, such allegations are fundamentally inconsistent with the definition of a "trap and trace" device under CIPA, which is limited to capturing signaling information, not content. *See Royal Caribbean*, 2025 WL 1745726, at *4–5.

#### ***1. Lack of Scienter.***

Because CIPA is a criminal statute, to establish liability, Plaintiff must establish the scienter element. *See* Cal. Penal Code § 20. Yet, Plaintiff fails to plead

---

[7] The crime-tort exception cannot be satisfied by alleging that the interception itself was unlawful; the "crime" or "tort" must be independent of the alleged wiretap. *See In re Google Inc. Gmail Litig.*, 2014 WL 1102660, at *18 (exception requires "some other improper purpose" beyond the interception itself).

any facts showing Blackhawk installed the Magnite Pixel with the intent to identify anonymous visitors without a court order. On the contrary, the Complaint emphasizes that ***it is Magnite and not Blackhawk***, who compiles and allegedly deanonymizes data. *See e.g.*, Compl. ¶ 13 ("the ***Magnite Spyware*** collects as much data as it can about an otherwise anonymous visitor to the Website and matches it with existing data ***Magnite*** has acquired and accumulated about hundreds of millions of Americans.") (emph. added). Thus, Plaintiff has not alleged any facts (nor can she) that Blackhawk itself engaged in such conduct or possessed the requisite criminal intent, which is dispositive of her claim. *See, e.g.*, *Heiting v. Taro Pharms. USA, Inc.*, 709 F. Supp. 3d 1007, 1019 (C.D. Cal. 2023) (dismissing CIPA complaint where plaintiff did "not allege facts demonstrating Defendant acted with the requisite knowledge or intent to aid and abet [a third party's] purported CIPA violation.").

#### ***2. No Use of Plaintiff's Communications or Signaling Information.***

Like her ECPA claim, Plaintiff's CIPA theory rests on vague and conclusory allegations disconnected from her own experience. CIPA prohibits the use of a "trap and trace device" to capture "incoming electronic or other impulses that identify the originating number or other dialing, routing, addressing, or signaling information reasonably likely to identify the source of a wire or electronic communication, but not the contents of a communication." Cal. Penal Code § 638.50(c). Plaintiff alleges only that the Magnite Pixel is "capable" of collecting such metadata, not that it did so in ***her*** case. Compl. ¶¶ 11, 20–21, 25, 27, 45. Courts routinely reject such hypothetical claims. *See Hartley v. Urban Outfitters, Inc.*, 740 F. Supp. 3d 410, 422 (E.D. Pa. 2024); *Mikulsky*, 682 F. Supp. 3d at 865; *Lightoller*, 2023 WL 3963823, at *4; *Kishnani v. Humana Inc.*, No. 2:24-cv-4085, 2025 WL 987654, at *4 (C.D. Cal. Feb. 20, 2025); *Price v. Headspace, Inc.*, No. 24STCV19921, 2025 WL 1237977, at *3 (Cal. Super. Apr. 01, 2025).

### *3. The Magnite Pixel Is Not a "Trap and Trace" Device.*

Plaintiff's CIPA claim also fails because the Magnite Pixel is not a "trap and trace device." CIPA's statutory framework makes clear that it applies only to devices used in telephonic surveillance, not software. A "trap and trace device" captures "incoming electronic or other impulses that identify the originating number" of a communication (Cal. Penal Code § 638.50(c)), but §§ 638.52–.53 repeatedly reference telephone lines and require that any order approving such devices specify the number and location of the relevant line. *Id.* § 638.52(d)(1)–(3). Appling this to the Magnite Pixel is incompatible with the statute. *Barragan v. Superior Ct.*, 148 Cal. App. 4th 1478, 1484 (2007) (rejecting interpretations leading to "absurd consequences").

Legislative history confirms this narrow scope. When the Legislature enacted Assembly Bill 929 in 2015, it described trap and trace devices as tools that "only record[] the numbers dialed to or from a particular phone number." *See* Assembly Floor Bill Analysis, AB 929, 2015-2016 Regular Session (July 8, 2015) ("… a 'pen register' [] allows law enforcement officers to record all outgoing numbers from a particular telephone line."). Had the Legislature intended to prohibit data collection from software, it could have done so. *Gutierrez v. Converse Inc.*, No. 24-4797, 2025 WL 1895315, at *3 (9th Cir. July 9, 2025) (Bybee, J., concurring) ("§ 631(a)'s first clause does not apply to internet communications…If the California Legislature wanted to apply § 631(a) to the internet, it could do so by amending that provision"). There is nothing in the legislative history that supports the application of § 638.51 to the Magnite Pixel, despite the prevalent use of such technology at the time it was enacted. Indeed, unlike other portions of CIPA, the relevant provisions, Cal. Penal Code § 638.50, were enacted in 2015, at a time when the internet and website tracking software were both known and highly utilized. Thus, there is no need for the Court to evaluate whether they were intended to evolve and apply to future

(unimaginable) technologies. *See, e.g.*, *In re Vizio, Inc., Consumer Priv. Litig.*, 238 F. Supp. 3d 1204, 1227 (C.D. Cal. 2017).

Courts interpreting the exact language that CIPA adopted from the federal Pen Register Act have concluded that the prohibited devices apply solely to those that can be "attached to a telephone line." *See, e.g., Application of U.S. of Am. for an Ord. Authorizing Use of a Cellular Tel. Digital Analyzer*, 885 F. Supp. 197, 200 (C.D. Cal. 1995) (noting the specific language/references to telephones throughout the Pen Register Act "cannot be assumed to be inadvertent"); *see also Lorillard v. Pons*, 434 U.S. 575, 581 (1978); *United States v. Pacheco*, 225 F.3d 148, 154 (2d Cir. 2000). Courts likewise reject attempts to expand "trap and trace" to cover internet software. *See Licea v. Hickory Farms LLC*, No. 23STCV26148, 2024 WL 1698147, at *4 (Cal. Super. Mar. 13, 2024) (dismissing trap-and-trace claim against website operator); *Royal Caribbean*, 2025 WL 1745726, at *5 (holding "software is not a trap and trace device"); *CuriosityStream*, WL 2272413, at *5 (same); *In re the Application of the U.S. for an Ord. Authorizing the Installation & Use of a Pen Reg. & Trap & Trace Device*, 890 F. Supp. 2d 747, 751 (S.D. Tex. 2012) (noting the alleged device must be tied to a specific phone or account). Plaintiff does not allege that Blackhawk attached any such device to her computer, but instead challenges software embedded on a public-facing website she voluntarily visited (Compl. ¶¶ 10, 15). The statute's text, structure, and history confirm CIPA targets telephonic surveillance, not routine internet advertising tools. Plaintiff's theory cannot be reconciled and must be dismissed.

***4. No Private Right of Action Without Injury.***

By CIPA's very terms, a plaintiff may only bring a private right of action if they have "***been injured by a violation*** of this chapter[.]" Cal. Penal Code § 637.2 (emph. added). Simply, to bring suit for a violation of CIPA, Plaintiff must adequately allege not only a violation but also that the violation resulted in some other injury. *Miller v. Hearst Commc'ns, Inc.*, No. 12-cv-733-GHK PLAX, 2012

WL 3205241, at *7 (C.D. Cal. Aug. 3, 2012) ("Because Plaintiff fails to allege a cognizable injury, she lacks statutory standing for her…claim, regardless of whether her allegations are sufficient to state a violation). Plaintiff has not identified any actual concrete harm suffered through the Website's data practices that in addition to an alleged technical statutory violation would support a claim. *See* Section IV(A)(2). Thus, Plaintiff cannot bring a private action under CIPA.

**E. Plaintiff Fails to Establish an Intrusion Upon Seclusion Claim.**

Like her statutory claims, Plaintiff's common-law intrusion claim fails. Here, Plaintiff must (yet fails to) allege "(1) an intentional intrusion into a private place, conversation, or matter, and (2) in a manner highly offensive to a reasonable person." *Hernandez v. Hillsides, Inc.*, 47 Cal. 4th 272, 286 (2009).

Plaintiff alleges only that the Website used the Magnite Pixel to collect IP addresses and similar metadata (Compl. ¶¶ 10–12, 20), which courts have consistently held do not implicate a reasonable privacy interest. *Forrester*, 512 F.3d at 510 (no expectation of privacy in IP addresses or email "to/from" fields); *Low*, 900 F. Supp. 2d at 1025 (disclosure of user IDs and browsing activity insufficient to state privacy claim). Plaintiff does not allege she provided any sensitive or confidential information during ***her*** visit, nor that Magnite or Blackhawk tied any such information to her personally. Without such allegations, she cannot establish an intrusion into a private matter. *See Popa*, 2025 WL 2448824, at *5 (finding a complaint which "identifies no embarrassing, invasive, or otherwise private information collected" insufficient to establish an intrusion into a private matter).

Nor does Plaintiff allege conduct that meets the "high bar" that is highly offensive to a reasonable person. *Belluomini v. Citigroup Inc*, No. C 13-01743, 2013 WL 5645168, at *3 (N.D. Cal. Oct. 16, 2013); *Ruiz v. Gap, Inc.*, 540 F. Supp. 2d 1121, 1127-28 (N.D. Cal. 2008), *aff'd,* 380 F. App'x 689 (9th Cir. 2010) (dismissing invasion of privacy claim where Plaintiff's stolen laptop contained personal information including social security number); *In re Google, Inc. Privacy Policy*

*Litig.*, 58 F. Supp. 3d 968, 988 (N.D. Cal. 2014) (routine data collection not "highly offensive"); *Hernandez*, 47 Cal. 4th at 287 (intrusion must be "sufficiently serious in nature, scope, and actual or potential impact to constitute an egregious breach of the social norms"); *Popa*, 2025 WL 2448824, at *5 (holding that website tracking did not constitute "highly offensive harm," especially where the plaintiff failed to explain how it caused any injury). Plaintiff's allegations, at most, describe ubiquitous practices, not egregious or outrageous behavior. *See Yoon*, 549 F. Supp. 3d at 1086 (routine tracking insufficient for intrusion claim. Without a protected privacy interest or egregious conduct, Plaintiff's intrusion claim fails.

## V. CONCLUSION

For the foregoing reasons, the Court should dismiss Plaintiff's Complaint in its entirety with prejudice.

Dated: September 19, 2025

Respectfully submitted,

**BAKER & HOSTETLER LLP**

By: /s/ *Bethany G. Lukitsch*
BETHANY G. LUKITSCH
CIARA N. WESTBROOKS

*Attorneys for Defendant*
BLACKHAWK NETWORK, INC.

**CERTIFICATE OF COMPLIANCE**

The undersigned, counsel of record for Defendant, certifies that this brief is 21 pages and contains 6,856 words, which complies with Paragraph 8 of this Court's August 18, 2025, Standing Order, filed at ECF No. 8.

Dated: September 19, 2025

**BAKER & HOSTETLER LLP**

By: /s/ *Bethany G. Lukitsch*
BETHANY G. LUKITSCH
CIARA N. WESTBROOKS

*Attorneys for Defendant*
BLACKHAWK NETWORK, INC.

## CERTIFICATE OF SERVICE

I hereby certify that on this 19th day of September, 2025, I filed the foregoing electronically through the CM/ECF system, which will provide notice and service to all counsel of record.

Dated: September 19, 2025

**BAKER & HOSTETLER LLP**

By: /s/ *Bethany G. Lukitsch*
BETHANY G. LUKITSCH
CIARA N. WESTBROOKS

*Attorneys for Defendant*
BLACKHAWK NETWORK, INC.