Bethany G. Lukitsch (SBN 314376)
*blukitsch@bakerlaw.com*
Ciara N. Westbrooks (SBN 348637)
*cwestbrooks@bakerlaw.com*
**BAKER & HOSTETLER LLP**
1900 Avenue of the Stars
Los Angeles, CA 90067-4301
Telephone: 310.820.8800
Facsimile: 310.820.8859

*Attorneys for Defendant*
BLACKHAWK NETWORK, INC.

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

SILVIA GARCIA,

Plaintiff,

v.

BLACKHAWK NETWORK, INC., an Arizona entity, d/b/a WWW.GIFTCARDS.COM,

Defendant.

Case No. 2:25-cv-07550-JLS-SSC

**DEFENDANT BLACKHAWK NETWORK, INC.'S REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT**

Date: December 5, 2025
Time: 10:30 a.m.
Ctrm: 8A
Judge: Josephine L. Staton

Action Filed: June 30, 2025
Action Removed: August 13, 2025

# TABLE OF CONTENTS


I. INTRODUCTION ........ 6

II. ARGUMENT ........ 7

A. Plaintiff Still Lacks Article III Standing. ........ 7

*1. No Cognizable Injury.* ........ 7

*2. Plaintiff's Allegations About Embedded Third-Party Cookies Does Not Establish Standing.* ........ 10

*3. Plaintiff's Attempt to Distinguish Forrester Fails* ........ 11

B. Plaintiff's Consent Arguments Still Fail. ........ 12

*1. Lesh is Inapposite.* ........ 12

*2. Blackhawk Provided Actual Notice and Consent Mechanisms.* ........ 13

*3. Foreseeability Is Irrelevant Where Actual Consent Exists.* ........ 13

C. CIPA § 638.51 Does Not Apply. ........ 14

*1. Pixels Are Not "Trap and Trace" Devices.* ........ 14

*2. Plaintiff's "IP Address" Theory Misstates the Statute and Ninth Circuit Law.* ........ 15

*3. Plaintiff Concedes the Intent Requirement Under Section 638.51.* ........ 16

D. Plaintiff's ECPA and CIPA § 631(a) Claims Still Fail as a Matter of Law. ........ 16

E. Plaintiff's Remaining Claims Are Still Deficient. ........ 17

*1. Fraud Claim Fails Under Rule 9(b).* ........ 17

*2. Unjust Enrichment Claim Fails.* ........ 18

*3. No Reasonable Expectation of Privacy or Highly Offensive Conduct.* ........ 18

III. CONCLUSION ........ 19

# TABLE OF AUTHORITIES

## Cases

*Aquilina v. Certain Underwriters at Lloyd's Syndicate #2003*, 406 F.Supp.3d 884 (D. Haw. 2019) .......... 18

*Aquilina v. Certain Underwriters at Lloyd's*, 407 F.Supp.3d 978 (D. Haw. 2019) .......... 18

*Brown v. Google LLC*, 685 F.Supp.3d 909 (N.D. Cal. 2023) .......... 16

*Byars v. Sterling Jewelers, Inc.*, No. 5:22-cv-01456, 2023 WL 2996686 (C.D. Cal. Apr. 5, 2023) .......... 9

*Byars v. Sterling Jewelers, Inc.*, No. 5:22-cv-01456, 2023 WL 3016225 (C.D. Cal. Apr. 5, 2023) .......... 9

*Byars v. Sterling Jewelers, Inc.*, No. 5:22-cv-01456, 2023 WL 4195768 (C.D. Cal. May 18, 2023) .......... 9

*Campbell v. Facebook Inc.*, 77 F.Supp.3d 836 (N.D. Cal. 2014) .......... 13

*CREEC v. Hospitality Props. Trust*, 867 F.3d 1093 (9th Cir. 2017) .......... 8, 9

*Eichenberger v. ESPN, Inc.*, 876 F.3d 979 (9th Cir. 2017) .......... 11

*Fed. Election Comm'n v. Cruz*, 596 U.S. 289 (2022) .......... 7, 9

*Gabrielli v. Haleon US Inc.*, No. 25-cv-02555, 2025 WL 2494368 (N.D. Cal. Aug. 29, 2025) .......... passim

*Gabrielli v. Insider, Inc.*, No. 24-cv-01566, 2025 WL 522515 (S.D.N.Y. Feb. 18, 2025) .......... 10

*Greenley v. Kochava, Inc.*, 684 F.Supp.3d 1024 (S.D. Cal. 2023) .......... 15

*Havens Realty Corp. v. Coleman*, 455 U.S. 363 (1982) .......... 7, 9

*Heeger v. Facebook, Inc.*, 509 F.Supp.3d 1182 (N.D. Cal. 2020) .......... 10, 12

*Heiting v. FKA Distributing Co. LLC*, No. 2:24-cv-07314, 2025 WL 736594 (C.D. Cal. Feb. 3, 2025) .......... 14

*In re Carrier IQ, Inc.*, 78 F.Supp.3d 1051 (N.D. Cal. 2015) .......... 17

*In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589 (9th Cir. 2020) .......... 8, 9, 11, 17

*In re Google Inc.*, No. 13-md-02430, 2013 WL 5423918 (N.D. Cal. Sept. 26, 2013)....................13, 16

*In re Meta Pixel Tax Filing Cases*, No. 22-cv-07557, 2025 WL 2243615 (N.D. Cal. Aug. 6, 2025)....................15

*In re Zynga Priv. Litig.*, 750 F.3d 1098 (9th Cir. 2014)....................15, 16

*Javier v. Assurance IQ, LLC*, 649 F.Supp.3d 891 (N.D. Cal. 2023) ....................12, 13, 17

*Khamooshi v. Politico LLC*, 786 F.Supp.3d 1174 (N.D. Cal. 2025) ....................11, 17

*Kingston v. Int'l Bus. Machines Corp.*, 454 F.Supp.3d 1054 (W.D. Wash. 2020)....................18

*Konop v. Hawaiian Airlines, Inc.*, 302 F.3d 868 (9th Cir. 2002)....................16

*Langer v. Kiser*, 57 F.4th 1085 (9th Cir. 2023) ....................7, 8, 9

*Lesh v. Cable News Network, Inc.*, 767 F.Supp.3d 33 (S.D.N.Y. 2025)....................12, 13, 15

*Lightoller v. Jetblue Airways Corp.*, No. 23-cv-00361, 2023 WL 3963823 (S.D. Cal. June 12, 2023)....................11

*Loder v. City of Glendale*, 14 Cal. 4th 846 (1997) ....................8

*Mirmalek v. Los Angeles Times Commc'ns LLC*, No. 24-cv-01797, 2024 WL 5102709 (N.D. Cal. Dec. 12, 2024)....................15

*Mitchener v. CuriosityStream, Inc.*, No. 25-cv-01471, 2025 WL 2272413 (N.D. Cal. Aug. 6, 2025)....................11

*Popa v. Microsoft Corp.*, 153 F.4th 784 (9th Cir. 2025) ....................9, 11, 17, 19

*Pro. Tax Appeal v. Kennedy-Wilson Holdings, Inc.*, 29 Cal. App. 5th 230 (2018) ....................18

*R.C. v. Walgreen Co.*, 733 F.Supp.3d 876 (C.D. Cal. 2024) ....................10

*Rodriguez v. Autotrader.com, Inc.*, No. 2:24-cv-08735, 2025 WL 1085787 (C.D. Cal. Apr. 4, 2025)....................8, 9

*Rodriguez v. Culligan Int'l Co.*, No. 25-cv-00225, 2025 WL 3064113 (S.D. Cal. Nov. 3, 2025)....................7, 9, 10, 12

*Shah v. Fandom, Inc.*, 754 F.Supp.3d 924 (N.D. Cal. 2024) ....................15

*Smith v. Facebook, Inc.*,
262 F.Supp.3d 943 (N.D. Cal. 2017),
*aff'd*, 745 F. App'x 8 (9th Cir. 2018)....................14

*Smith v. LoanMe, Inc.*,
11 Cal. 5th 183 (2021)....................15

*Smith v. YETI Coolers, LLC*,
754 F.Supp.3d 933 (N.D. Cal. 2024)....................16, 17

*Spokeo, Inc. v. Robins*,
578 U.S. 330 (2016)....................8

*TransUnion LLC v. Ramirez*,
594 U.S. 413 (2021)....................8, 9, 11, 12

*United States v. Forrester*,
512 F.3d 500 (9th Cir. 2008)....................passim

*United States v. Jenkins*,
No. 1:18-cr-00181, 2019 WL 1568154 (N.D. Ga. Apr. 11, 2019)....................10

*United States v. Matish*,
193 F.Supp.3d 585 (E.D. Va. 2016)....................10

*United States v. Staves*,
383 F.3d 977 (9th Cir. 2004)....................9, 13

*Xu v. Reuters News & Media Inc.*,
No. 24-cv-2466, 2025 WL 488501 (S.D.N.Y. Feb. 13, 2025)....................10

*Zarif v. Hwareh.com, Inc.*,
789 F.Supp.3d 880 (S.D. Cal. 2025)....................14

**Statutes**

18 U.S.C. § 2511(2)(d)....................17

18 U.S.C. § 2520(a)....................16

Cal. Penal Code § 631(a)....................12, 13, 16

Cal. Penal Code § 638.50....................15

Cal. Penal Code § 638.51....................12, 14, 15, 16

Cal. Penal Code § 638.52....................14

Cal. Penal Code § 638.53....................14

**Rules**

Fed. R. Civ. P. 9(b)....................17

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Plaintiff's Opposition to Blackhawk's Motion to Dismiss ("Opposition" or "Opp.") offers no valid basis for her claims to survive. Blackhawk's Motion should be granted, and the FAC dismissed with prejudice.

*First*, she cannot establish Article III standing. As a self-described "tester," Plaintiff alleges only routine metadata—IP addresses and generalized cookie functionality—that does not implicate a legally protected privacy interest. Regulatory disclosure statutes like CCPA do not transform this data into constitutionally protected information or create standing under federal law. Nor do generalized allegations about embedded third-party cookies or "spyware" suffice; Plaintiff pleads no facts showing sensitive data collection, disclosure, or harm.

*Second*, Plaintiff's consent arguments fail. Both the ECPA and CIPA permit one-party consent, and Blackhawk, as a party to the communication, consented to the alleged tracking. Plaintiff also interacted with the Website after receiving notice through a cookie banner and Privacy Policy, which courts consistently deem sufficient to establish consent.

*Third*, Plaintiff misinterprets California's trap-and-trace statute. Pixels and cookies are not "trap and trace devices," and the statute's plain language and structure confirm it applies only to telephonic technologies requiring a court order. Extending it to routine web analytics would render compliance impossible and criminalize ordinary internet functionality.

*Fourth*, Plaintiff's ECPA and CIPA § 631(a) claims remain deficient. She alleges no interception of "contents," no contemporaneous transmission, and no facts showing Blackhawk itself intercepted communications. Liability attaches only to direct interceptors, not entities embedding third-party code. Routine analytics do not trigger the crime-tort exception, and her Opposition fails to allege the requisite intent for liability.

*Finally*, Plaintiff's fraud and unjust enrichment claims fail as a matter of law. She does not plead the specific misrepresentations, reliance, or resulting harm required for fraud, nor any facts showing Blackhawk profited from her data or retained a benefit unjustly. Further, unjust enrichment is not a standalone cause of action under California law.

For these reasons, and those stated in Blackhawk's Motion, the FAC should be dismissed with prejudice.

## II. ARGUMENT

### A. Plaintiff Still Lacks Article III Standing.

Plaintiff's Opposition confirms that she cannot establish standing under Article III. Rather than identifying a concrete injury, her arguments rely on generalized assertions of statutory violations and routine metadata. These are the same arguments her counsel advanced in another case that were recently and unequivocally rejected. *See Rodriguez v. Culligan Int'l Co.*, No. 25-cv-00225, 2025 WL 3064113, at *3-5 (S.D. Cal. Nov. 3, 2025) ("*Culligan*") (Order Granting Motion to Dismiss).

#### ***1. No Cognizable Injury.***

At the outset, Plaintiff's Opposition misapprehends Blackhawk's position regarding a tester's ability to establish Article III standing, and responds to an argument that Blackhawk does not make. Blackhawk does not contend that testers can ***never*** establish "standing to sue because [they] suffered a self-inflicted injury." Opp., 1. Both the Ninth Circuit and the Supreme Court have recognized circumstances where testers can demonstrate concrete harm sufficient to establish standing, despite the self-inflicted nature of their injuries. *See, e.g., Fed. Election Comm'n v. Cruz*, 596 U.S. 289, 296-97 (2022) ("*Cruz*") (First Amendment); *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 373-74 (1982) (racial discrimination under the Fair Housing Act); *Langer v. Kiser*, 57 F.4th 1085, 1094 (9th Cir. 2023) (disability discrimination under the ADA); *CREEC v. Hospitality Props. Trust*, 867

F.3d 1093, 1101-02 (9th Cir. 2017) (same). Plaintiff's situation is readily distinguishable.

An intangible harm, like the dignitary harm asserted by Plaintiff, is concrete enough for Article III purposes only if the alleged injury "has a 'close relationship' to a harm 'traditionally' recognized as providing a basis for a lawsuit in American courts." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 424 (2021) (quoting *Spokeo, Inc. v. Robins*, 578 U.S. 330, 341 (2016)). Whether any of Plaintiff's intangible harms constitute an Article III injury-in-fact hinges on whether Plaintiff has suffered a well-pleaded injury under the "close … common-law analogue." *TransUnion*, 594 U.S. at 424.

The common law analogue for Plaintiff's alleged invasion of privacy harm—an invasion of privacy claim under California common law—requires pleading three "threshold issues": "a legally protected privacy interest, reasonable expectation of privacy, and serious invasion of privacy." *Loder v. City of Glendale*, 14 Cal. 4th 846, 891 (1997). To evaluate these issues, courts ask whether there exists a "reasonable expectation of privacy" in the information. *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 601 (9th Cir. 2020).

Plaintiff's expectations and motivations in visiting the Website and the Website's content are thus not only relevant to determining standing, but dispositive. *See Rodriguez v. Autotrader.com, Inc.*, No. 2:24-cv-08735, 2025 WL 1085787, at *1 (C.D. Cal. Apr. 4, 2025) ("*Autotrader*") ("[I]nvasions of privacy [] depend on the plaintiff's reasonable expectations."). The same cannot be said of cases brought under the First Amendment, the Fair Housing Act, or the ADA, where "the plaintiffs were injured regardless of their expectations or intentions." *Id.*; *see also Langer*, 57 F.4th at 1094 (("[A] plaintiff's motive for going to a place of public accommodation is irrelevant to standing."); *CREEC*, 867 F.3d at 1102. Accordingly, Plaintiff's

reliance on *Havens*, *Cruz*, *Langer*, and *CREEC* is misplaced.[1] *See Autotrader,* 2025 WL 1085787, at *1.

Plaintiff makes no attempt to show she could have a reasonable expectation of privacy despite her status as a privacy tester. Instead, Plaintiff seeks to relitigate *Autotrader* based on: (1) Judge Klausner's purported failure to address *United States v. Staves*, 383 F.3d 977 (9th Cir. 2004), *see* Opp., 4-5; and (2) Judge Klausner's reliance on *Byars v. Sterling Jewelers, Inc.*, No. 5:22-cv-01456, 2023 WL 2996686 (C.D. Cal. Apr. 5, 2023), *judgment entered,* 2023 WL 3016225 (C.D. Cal. Apr. 5, 2023), *reconsideration denied,* 2023 WL 4195768 (C.D. Cal. May 18, 2023). *See* Opp., 4. Neither point is persuasive.

Further, the Opposition argues that alleged violations of California privacy statutes suffice to establish injury. Opp., 8. The *Culligan* court expressly rejected this approach, holding that "current Ninth Circuit precedent requires a plaintiff to demonstrate more than just a statutory violation when evaluating whether a plaintiff has alleged a concrete injury." *Culligan*, 2025 WL 3064113, at *3 (quoting *Popa v. Microsoft Corp.*, 153 F.4th 784, 793 (9th Cir. 2025)). The court emphasized that *TransUnion* and *Popa* require a harm with a "close relationship" to a traditional common-law analogue, such as intrusion upon seclusion, not merely an invasion of a legislatively created interest. *Id.* Plaintiff, like in *Culligan*, fails to identify any such analogue.

Even if Plaintiff could establish standing as a privacy tester, she has failed to do so here. In her Opposition, Plaintiff relies almost exclusively on the purported collection of her IP address/geolocation data to evidence a reasonable expectation of privacy. *See* Opp., 6-7. Given the complete absence of any allegations in the FAC

---

[1] Plaintiff's assertion that *CREEC* controls because "invasion of privacy and civil rights claims both implicate harm to a dignitary interest" misses the mark. *See* Opp., 3:1-2. That CIPA and ADA claims may implicate similar kinds of harm is irrelevant to the question of whether Plaintiff had a "reasonable expectation of privacy" in the information Blackhawk purportedly collected. *See In re Facebook, Inc. Internet Tracking Litigation*, 956 F.3d at 601.

specific to Plaintiff and her purported visit to the Website (*see* Motion at 18), Plaintiff's reliance on IP addresses is unsurprising. But courts have repeatedly rejected any notion of a cognizable injury based on collection of IP addresses well after *United States v. Forrester*, 512 F.3d 500, 519 (9th Cir. 2008), was decided and the CECPA and CCPA were enacted. *See, e.g.*, *R.C. v. Walgreen Co.*, 733 F.Supp.3d 876, 889 (C.D. Cal. 2024) ("Plaintiffs do not have a legally protected privacy interest in their IP addresses[.]"); *Heeger v. Facebook, Inc.*, 509 F.Supp.3d 1182, 1190 (N.D. Cal. 2020) ("There is no legally protected privacy interest in IP addresses alone[.]"); *Gabrielli v. Insider, Inc.*, No. 24-cv-01566, 2025 WL 522515, at *4 (S.D.N.Y. Feb. 18, 2025) ("…an IP address which cannot identify an individual user and at most conveys general geographic information does not justify [that a legally protected privacy interest is implicated]"); *United States v. Matish*, 193 F.Supp.3d 585, 615 (E.D. Va. 2016) ("Generally, one has no reasonable expectation of privacy in an IP address when using the Internet."); *United States v. Jenkins*, No. 1:18-cr-00181, 2019 WL 1568154, at *5 (N.D. Ga. Apr. 11, 2019) ("Defendant Jenkins had no reasonable expectation of privacy in an IP address assigned by the Internet Service Provider[.]"); *Xu v. Reuters News & Media Inc.*, No. 24-cv-2466, 2025 WL 488501, at *4 (S.D.N.Y. Feb. 13, 2025) (collecting cases). Plaintiff's reliance on IP addresses and cookie functionality closely mirrors the plaintiff's theory in *Culligan*, which the *Culligan* court found insufficient. That court held that IP addresses, browser details, and similar data are "designed to be exchanged to facilitate communication" and do not implicate a reasonable expectation of privacy. *Culligan*, 2025 WL 3064113, at *5. It rejected arguments that statutory protections or generalized claims of "highly offensive" conduct could transform routine metadata into a concrete injury. *Id.* *4.

***2. Plaintiff's Allegations About Embedded Third-Party Cookies Does Not Establish Standing.***

Plaintiff argues the Website "embedded the software code of numerous data brokers" and lacked a proper "Notice at Collection" under the CCPA (Opp., 7-9),

but these allegations do not establish Article III standing or a CIPA violation. Generalized claims that cookies "harvest visitor data" and "build profiles" (Opp., 8) are insufficient absent facts showing disclosure of sensitive information. *Popa v. Microsoft Corp.*, 153 F.4th 784, 791-93 (9th Cir. 2025); *Khamooshi v. Politico LLC*, 786 F.Supp.3d 1174, 1179 (N.D. Cal. 2025). Statutory noncompliance alone does not create injury—"An injury in law is not an injury in fact." *TransUnion*, 594 U.S. at 425; *see Mitchener v. CuriosityStream, Inc.*, No. 25-cv-01471, 2025 WL 2272413, at *5 (N.D. Cal. Aug. 6, 2025). Plaintiff's CMP "misconfiguration" claim (Opp., 9) is also speculative; courts reject standing based on hypothetical flaws. *Lightoller v. Jetblue Airways Corp.*, No. 23-cv-00361, 2023 WL 3963823, at *4 (S.D. Cal. June 12, 2023). Nor do *In re Facebook, Inc. Internet Tracking Litigation*, 956 F.3d 589 (9th Cir. 2020), or *Eichenberger v. ESPN, Inc.*, 876 F.3d 979 (9th Cir. 2017) help, as those cases involved surreptitious cross-site tracking, not mere capability. Post-*TransUnion* decisions dismiss similar claims. *Popa*, 153 F.4th at 792-93. Plaintiff alleges no sensitive data collection, disclosure, or harm beyond speculation; under *TransUnion* and *Popa*, these allegations do not confer standing or state a plausible CIPA claim.

#### ***3. Plaintiff's Attempt to Distinguish Forrester Fails***

Plaintiff devotes nearly two pages to arguing that *Forrester*, 512 F.3d 500, is "distinguishable for many reasons" (Opp., 10-12), but none withstand scrutiny. *Forrester* expressly held that "Internet users have no expectation of privacy in … the IP addresses of the websites they visit" because such data is voluntarily conveyed for routing purposes, and that rationale applies equally to a user's device IP address—it is still addressing information, not content. *Id.* at 510. Later-enacted statutes like CECPA and CCPA impose regulatory obligations; they do not transform routine metadata into a constitutionally protected privacy interest, and courts applying *TransUnion*, 594 U.S. 413, have rejected the notion that statutory labeling alone creates concrete injury. *See Popa*, 153 F.4th at 791–93. Nor does

technological change alter the analysis: Article III injury turns on the nature of the information, not the sophistication of analytics, and IP addresses remain routing data, not intimate content. Courts continue to hold that metadata, even when aggregated, does not confer standing absent disclosure of sensitive facts. *See Heeger*, 509 F.Supp.3d at 1190. Plaintiff's discussion of *Smith*, ECPA, and the Patriot Act (Opp., 12) is irrelevant; those amendments govern law enforcement procedures, not whether a civil plaintiff has suffered a concrete injury. The court in *Culligan* addressed and reaffirmed that *Forrester*'s rationale applies equally to a user's own IP address: it is still routing information voluntarily transmitted for the purpose of directing communications. *Culligan*, 2025 WL 3064113, at *4. The court rejected speculation that technological changes or later-enacted statutes alter this analysis, noting that neither CCPA nor CECPA creates a constitutional privacy interest in IP addresses. *Id*. *Forrester* remains controlling Ninth Circuit precedent, and courts, including post-*TransUnion* decisions, continue to apply its reasoning: routine web routing data does not create a legally protected privacy interest or a concrete injury.

**B. <u>Plaintiff's Consent Arguments Still Fail.</u>**

Plaintiff's assertion that Blackhawk "failed to satisfy its burden of proving consent" misstates both the governing law and the facts alleged.

***1. Lesh is Inapposite.***

Plaintiff relies on *Lesh v. Cable News Network, Inc.*, 767 F.Supp.3d 33 (S.D.N.Y. 2025), to argue that Blackhawk's own consent is "illogical." Opp., 12. That reliance is misplaced for two reasons. First, *Lesh* is a Southern District of New York decision and therefore not binding on this Court. Ninth Circuit authority controls and makes clear that consent of one party to the communication satisfies both the ECPA and CIPA § 631(a). *See Javier v. Assurance IQ, LLC*, 649 F.Supp.3d 891, 897 (N.D. Cal. 2023) (interpreting § 631(a) consistent with federal law and holding that one-party consent is sufficient). Nothing in § 638.51(b)(5) requires multiple-party consent; the statute refers to "a user," not "all users." Plaintiff's

interpretation would rewrite the statute. Second, even if *Lesh* were persuasive, its facts differ significantly. In *Lesh*, 767 F.Supp.3d 33, the plaintiff alleged CNN installed trackers and transmitted IP addresses without disclosure or opt-out, and the court emphasized the absence of any consent mechanism. Here, Blackhawk provided a cookie banner and Privacy Policy before interaction, which courts deem sufficient. *See Campbell v. Facebook Inc.*, 77 F.Supp.3d 836, 847 (N.D. Cal. 2014). *Lesh* did not address § 631(a) or the ECPA, both of which allow one-party consent. *See Javier*, 649 F.Supp.3d at 897. Finally, *Lesh* involved IP address collection tied to advertising trackers but did not analyze whether IP addresses are private under Ninth Circuit law. Here, *Forrester*, 512 F.3d at 510, indisputably holds they are not.

***2. Blackhawk Provided Actual Notice and Consent Mechanisms.***

Plaintiff asserts that data was collected "preceding any opportunity for visitors to consent" (FAC ¶ 30), but this is contradicted by the record. The Website displayed a cookie banner and linked Privacy Policy before any interaction, disclosing the use of cookies and analytics. Courts have held that such disclosures and continued site use constitute consent. *See Campbell*, 77 F.Supp.3d at 847. Plaintiff's conclusory allegations cannot overcome these facts.

***3. Foreseeability Is Irrelevant Where Actual Consent Exists.***

Plaintiff cites *Staves*, 383 F.3d at 981, for the rule that "foreseeability of monitoring is insufficient," but Blackhawk does not rely on foreseeability; consent here is based on explicit disclosures and Plaintiff's voluntary interaction with the Website after being presented with the CMP and Privacy Policy. Courts distinguish implied consent inferred from foreseeability from actual consent manifested by conduct after notice. *See In re Google Inc.*, No. 13-md-02430, 2013 WL 5423918, at *12 (N.D. Cal. Sept. 26, 2013) (adequate notice satisfies consent). The FAC's repeated assertions that Plaintiff "did not consent" (FAC ¶¶ 5, 30, 34, 60-61, 63, 98-100, 107, 109, 121) are conclusory and cannot overcome disclosures and conduct demonstrating consent. Courts routinely reject such claims where plaintiffs

continued using a site after being informed of tracking practices; for example, *Smith v. Facebook, Inc.*, 262 F.Supp.3d 943 (N.D. Cal. 2017), *aff'd,* 745 F. App'x 8 (9th Cir. 2018), held Facebook's Data Policy adequately disclosed its tracking practices, including collection from third-party sites.

## C. <u>CIPA § 638.51 Does Not Apply.</u>

### *1. Pixels Are Not "Trap and Trace" Devices.*

Plaintiff asserts that "thirteen different" federal courts have held that "tracking software like what is alleged in the FAC can constitute either a pen register or a trap and trace device under § 638.51 of the Penal Code." Opp., 13. But Plaintiff cites to cases that are unpersuasive. For example, in *Heiting v. FKA Distributing Co. LLC*, No. 2:24-cv-07314, 2025 WL 736594, at *3 (C.D. Cal. Feb. 3, 2025), the Court supported its rejection of the defendant's failure to state a claim argument with one sentence of analysis. In *Zarif v. Hwareh.com, Inc.*, the Court based its denial largely on arguments that Blackhawk does not make. 789 F.Supp.3d 880 (S.D. Cal. 2025) (rejecting application based on the *plaintiff's* purported consent and service provider exemption).

Even if the cases Plaintiff points to were factually analogous and instructive (they are not), that other federal courts have embraced incomplete or flawed reasoning regarding the applicability of § 638.51 is no reason for the Court to do so here. As explained in detail in Blackhawk's Motion and largely ignored in Plaintiff's Opposition, the plain language of § 638.51 and CIPA's statutory framework make clear that the Legislature never intended to address the Pixels.

CIPA § 638.51 prohibits installing or using such devices "without first obtaining a court order pursuant to Section 638.52 or 638.53," which outline procedures for law enforcement and repeatedly reference telephones and telephone numbers—making compliance impossible for website technology. Plaintiff ignores this "court order" requirement and the Legislature's clear intent to limit the statute to devices operable on telephone lines. *See* Cal. Penal Code §§ 638.51-53. Plaintiff's

reliance on *Greenley v. Kochava, Inc.*, 684 F.Supp.3d 1024, 1050 (S.D. Cal. 2023), misses the point: even if software can be a "process" (it is not), § 638.51 does not impose a blanket ban; it expressly conditions use on a court order, which cannot be issued without telephone information. Interpreting the statute to Pixels would render compliance impossible and make half the Legislature's language superfluous.

### ***2. Plaintiff's "IP Address" Theory Misstates the Statute and Ninth Circuit Law.***

Plaintiff claims IP addresses qualify as "transmitted by an instrument or facility" under Penal Code § 638.50 and cites *Lesh*, 767 F.Supp.3d 33, and *Shah v. Fandom, Inc.*, 754 F.Supp.3d 924, 928-30 (N.D. Cal. 2024), to argue § 638.50 "does not limit" pen registers to telephones (Opp., 16). But *Lesh* is out-of-circuit and non-binding; Ninth Circuit precedent controls. *Forrester*, 512 F.3d at 510, holds IP addresses are analogous to phone numbers and constitute non-content routing information. Extending § 638.51 to cookies would ignore its telephonic origins and criminalize routine internet functionality. The statute was modeled on the federal Pen Register Act, aimed at law enforcement devices capturing dialing/signaling info—not common analytics. *See Smith v. LoanMe, Inc.*, 11 Cal. 5th 183, 191 (2021). Reading "instrument or facility" to include every browser/server would render the statute limitless. Even if IP addresses are "addressing information," that does not make cookies a "pen register." The Ninth Circuit has held IP addresses "do not reveal any more about the underlying contents of communication than do phone numbers." *In re Zynga Priv. Litig.*, 750 F.3d 1098, 1108 (9th Cir. 2014); *Forrester*, 512 F.3d at 510; *see also Mirmalek v. Los Angeles Times Commc'ns LLC*, No. 24-cv-01797, 2024 WL 5102709, at *4 (N.D. Cal. Dec. 12, 2024). Plaintiff alleges only routine metadata—not contents—so § 638.51's core requirement is unmet. Finally, Plaintiff's reliance on *Gabrielli v. Haleon US Inc.*, No. 25-cv-02555, 2025 WL 2494368, at *12 (N.D. Cal. Aug. 29, 2025) ("*Haleon*") and *In re Meta Pixel Tax Filing Cases*, No. 22-cv-07557, 2025 WL 2243615, at *3 (N.D. Cal. Aug. 6, 2025)

is misplaced; unlike those cases—which plaintiffs alleged transmission of their personal and financial information, form-field data, and detailed user inquiries via session replay—the conduct alleged here is limited to routine metadata such as IP addresses and device information.

### *3. Plaintiff Concedes the Intent Requirement Under Section 638.51.*

Plaintiff's Opposition does not address, and the FAC fails to plausibly allege, the required intent element under § 638.51. To state a claim, Plaintiff must allege that Blackhawk acted with "knowledge of the conduct that will violate the statute and a purpose of aiding, agreeing with, or employing the third party to commit those acts." *Smith v. YETI Coolers, LLC*, 754 F.Supp.3d 933 (N.D. Cal. 2024) ("*YETI Coolers"*). Plaintiff's Opposition does nothing to change that. Absent allegations showing criminal intent, Plaintiff's purported criminal violation fails as a matter of law and must be dismissed.

### **D. Plaintiff's ECPA and CIPA § 631(a) Claims Still Fail as a Matter of Law.**

Plaintiff's Opposition does not cure the defects in her ECPA and CIPA § 631(a) claims. First, she cites *Haleon*, 2025 WL 2494368, at *11, and *Brown v. Google LLC*, 685 F.Supp.3d 909, 935-36 (N.D. Cal. 2023), to argue URLs are "contents," but the Ninth Circuit holds IP addresses and routing data do not reveal substance or meaning. *In re Zynga Privacy Litigation*, 750 F.3d at 1108; *Forrester*, 512 F.3d at 510. Plaintiff alleges only metadata, unlike *Haleon*, which involved form-field data. Second, contemporaneous interception is narrowly construed; cookie placement and post-request processing do not qualify. *Konop v. Hawaiian Airlines, Inc.*, 302 F.3d 868, 878 (9th Cir. 2002); *In re Carrier IQ, Inc.*, 78 F.Supp.3d 1051, 1081 (N.D. Cal. 2015). Third, § 2520(a) imposes liability only on direct interceptors, not entities embedding third-party code. *In re Google Inc.*, 2013 WL 5423918, at *11-12; *In re Carrier IQ, Inc.*, 78 F.Supp.3d 1051, 1081 (N.D. Cal.

2015); *Javier*, 649 F.Supp.3d at 897. Plaintiff alleges no facts showing Blackhawk intercepted communications. Fourth, the crime-tort exception under § 2511(2)(d) does not apply; routine analytics for advertising is not egregious conduct. *In re Facebook, Inc. Internet Tracking Litigation*, 956 F.3d at 607. Finally, Plaintiff's Opposition does not address, and the FAC fails to allege, that Blackhawk acted with requisite intent. To state a claim, Plaintiff must plead facts showing Blackhawk knew its conduct would violate the statute and acted with that purpose. *YETI Coolers*, 754 F.Supp.3d at 933. Plaintiff's silence concedes the issue. Without content, contemporaneous interception, direct liability, crime-tort purpose, or scienter, these claims fail as a matter of law.

**E. Plaintiff's Remaining Claims Are Still Deficient.**

***1. Fraud Claim Fails Under Rule 9(b).***

Plaintiff's reliance on *Haleon*, 2025 WL 2494368, is misplaced. *Haleon* involved consumer healthcare websites (*i.e.*, Tums, Advil, Centrum, Sensodyne) that the court specifically noted "is likely more sensitive than what the plaintiffs in *Popa* inputted." *Id.* at *7. The plaintiff alleged entry of personal data such as name, age, gender, email, location, and payment information, and claimed *Haleon* misrepresented that users could "Reject All" cookies while continuing to track them. *Id.* at *2, *12. Those allegations identified a specific misrepresentation, sufficient to survive at the motion to dismiss stage. *Id.* This case is fundamentally different. Plaintiff visited a gift card retail site, not a healthcare platform. She does not allege entry of health-related or financial data, nor any comparable misrepresentation. Plaintiff asserts only generalized allegations about cookies, geolocation IP addresses, data courts repeatedly hold is not private or sensitive. *Forrester*, 512 F.3d at 510; *Khamooshi*, 786 F.Supp.3d at 1180 n.4. Unlike *Haleon*, Plaintiff fails to plead the who, what, when, where, and how" required under Rule 9(b). Her fraud claim should be dismissed.

### 2. *Unjust Enrichment Claim Fails.*

Plaintiff's unjust enrichment claim fares no better. *Haleon* allowed such a claim to proceed because the plaintiff plausibly alleged that Haleon profited from monetizing sensitive user data and that California law permits disgorgement even absent direct economic loss. *Haleon*, 2025 WL 2494368, at *14-15. Here, Plaintiff alleges no facts showing Blackhawk profited from *her* data or that any enrichment occurred. She offers only conclusory statements that third party cookies *may* allow Blackhawk to benefit from the data they allegedly collect, without alleging how or to what extent.

Courts require specific allegations of a benefit conferred and unjust retention. In *Kingston v. Int'l Bus. Machines Corp.*, 454 F.Supp.3d 1054, 1066 (W.D. Wash. 2020), the court dismissed the claim because the plaintiff failed to articulate the exact benefit conferred, a critical element. Similarly, *Aquilina v. Certain Underwriters at Lloyd's Syndicate #2003*, 406 F.Supp.3d 884, 892-93 (D. Haw. 2019) dismissed unjust enrichment where plaintiffs offered only generalized assertions, leaving defendants to speculate about the alleged benefit. Courts also require allegations showing retention was unjust; *Pro. Tax Appeal v. Kennedy-Wilson Holdings, Inc.*, 29 Cal. App. 5th 230, 238 (2018) emphasized that unjust retention must be pled; and *Aquilina v. Certain Underwriters at Lloyd's*, 407 F.Supp.3d 978, 986 (D. Haw. 2019) rejected claims that merely incorporated other facts without explaining why retention was unjust.

Further, the Opposition fails to address, and thus concedes, that unjust enrichment is not a standalone cause of action under California law. Plaintiff's unjust enrichment claim should therefore be dismissed.

### 3. *No Reasonable Expectation of Privacy or Highly Offensive Conduct.*

Plaintiff's constitutional and common-law privacy claims still fail for lack of factual support and legal sufficiency. The Opposition at 1-2 attempts to treat *Haleon*

as a one-size-fits-all solution, but this case is far more analogous to *Popa* than to *Haleon*. In *Popa*, 153 F.4th 784, the Ninth Circuit rejected standing for privacy claims involving a pet supply website because the data collected was routine and non-sensitive. Likewise, a gift card site does not implicate the potentially "highly offensive" intrusion or sensitive information that influenced the court in *Haleon*. Plaintiff alleges no health-related, financial, or intimate data—only routine metadata such as IP addresses and browsing activity, which courts have repeatedly held does not create a reasonable expectation of privacy or rise to the level of an egregious breach of social norms.

## III. CONCLUSION

For the foregoing reasons and those stated in its Motion, Blackhawk respectfully requests that the Court dismiss Plaintiff's FAC in its entirety with prejudice.

Dated: November 21, 2025

Respectfully submitted,

**BAKER & HOSTETLER LLP**

By: /s/ *Ciara N. Westbrooks*
BETHANY G. LUKITSCH
CIARA N. WESTBROOKS

*Attorneys for Defendant*
BLACKHAWK NETWORK, INC.

# CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Defendant, certifies that this brief is 14 pages and contains 4,200 words, which complies with Paragraph 8 of this Court's August 18, 2025, Standing Order, filed at ECF No. 8.

Dated: November 21, 2025

**BAKER & HOSTETLER LLP**

By: /s/ *Ciara N. Westbrooks*
BETHANY G. LUKITSCH
CIARA N. WESTBROOKS

*Attorneys for Defendant*
BLACKHAWK NETWORK, INC.

**CERTIFICATE OF SERVICE**

I hereby certify that on this 21st day of November, 2025, I filed the foregoing electronically through the CM/ECF system, which will provide notice and service to all counsel of record.

Dated: November 21, 2025

**BAKER & HOSTETLER LLP**

By: /s/ *Ciara N. Westbrooks*
BETHANY G. LUKITSCH
CIARA N. WESTBROOKS

*Attorneys for Defendant*
BLACKHAWK NETWORK, INC.